**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re Dismantling of LAKE PLACID BRANCH TRACK.**

**No. Bky. 70-347.**

United States District Court, E. D. Pennsylvania.

Nov. 9, 1973.

James E. Howard, Philadelphia, for the Trustees of the PCTC.

Eugene I. Selker, Selker, Einbund & Rubenstein, Cleveland, Ohio, for Young-Posen, Inc.

John C. McTiernan, Albany, N. Y., for Dept. of Transportation, State of New York.

F. Martin Bowne, Davies, Hardy, Ives & Lawther, New York City, for Irving Trust Co., indenture trustee.

## MEMORANDUM AND ORDER NO. 1372

FULLAM, District Judge.

A portion of the Debtor's rail system known as the Lake Placid Branch extends from Remsen, New York to Lake Placid, New York, a distance of approximately 118 miles. Pursuant to § 1(18) of the Interstate Commerce Act, the Interstate Commerce Commission, by an order effective July 14, 1972, authorized the Trustees to abandon the Lake Placid Branch (Finance Docket No. 26567, sub–No. 2). The Trustees had earlier been authorized by this Court to pursue the abandonment application before the Commission, by Order No. 174 in these proceedings, entered March 1, 1971. The Department of Transportation of the State of New York was a party to the proceedings before the Commission; and the State of New York was given notice of the earlier proceedings in this Court.

Following the approval of the abandonment application by the Commission, the Department of Transportation of the

State of New York urged the Trustees to leave the branch line intact, and to make it available for purchase by private or local interests. The Trustees have been pursuing negotiations to that end both before and after the Commission's approval of the abandoment. Some interest in possible acquisition of the branch was expressed by various groups, some for the purpose of short-line rail operations, and others for snowmobile trails and similar recreational uses. However, as of the present date, none of these negotiations has borne fruit, and no significant offers for the branch have been received. The principal obstacle to any such acquisition has been the inability of the potential purchasers to obtain financing from either governmental or private sources.

Salvage of materials from abandoned branch lines plays an important part in the operation of the Debtor's rail system. Replacement rails and other materials are constantly needed in order to provide adequate maintenance and improvement of the operating portions of the Debtor's railroad.[1] Such materials are usually in short supply, and always expensive. Much of the rail on the Lake Placid Branch is in good condition, suitable for reuse. Moreover, it is 105-pound rail, a type of rail which is no longer being manufactured, but which is still used on most of the branch lines of the former New York Central. Generally speaking, it is not economically feasible to replace defective rail of one type with replacement rail of a different type.

In short, there is a critical need for the rails now comprising the Lake Placid Branch. It is estimated that approximately 100 miles of this rail is reusable. It would cost in excess of $3 million, and perhaps as much as $5 million, to purchase such rail on the open market, if it were available.

Removal of materials from one part of the Debtor's rail system for installation in another part, and the sale of non-reusable materials, give rise to some exceedingly complex legal questions involving the rights of the respective lienholders. Until counsel for the various parties in interest could work out a resolution to these problems which would permit such salvage, reuse and sale, the Trustees were not in a position to conduct any large-scale salvage operations. But this impediment has been removed by the entry of Order No. 1227 herein, on May 18, 1973.

When it became apparent to the Trustees that sale of the Lake Placid Branch intact was not a realistic possibility, they entered into a contract with Young-Posen, Inc. for the salvaging of the Lake Placid Branch. The contract provides for the removal of all rail, ties, bridges and other track material, and for delivery to the Trustees of the 100-plus miles of reusable rail and certain other designated materials. Under the terms of the contract, the work was to commence on September 24, 1973.

On September 21, 1973, the Commissioner of Transportation of the State of New York filed suit in the State Court in the County of Albany, New York, against Young-Posen, Inc., and obtained a temporary restraining order precluding that firm from carrying out its contract with the Trustees, pending a further hearing on plaintiff's request for a preliminary injunction, scheduled for September 28, 1973. The suit was based upon § 18 of the Transportation Law of the State of New York, McKinney's Consol. Laws, c. 61–a which provides:

"Notwithstanding the provisions of any general, special or local law to the contrary, the Commissioner [of Transportation] shall have a preferential right to acquire, for and in behalf of the people of the State of New York, for use in the future for transportation purposes . . . any property which was acquired for the purpose of operating a railroad

---

1. The recently effective federal rail safety standards (from which the Trustees have been forced to seek temporary exemption) have heightened the urgency of these needs.

thereon and which is owned by a railroad company and located within this State and which has been abandoned for railroad transportation purposes. No railroad company shall dispose of any such property without having first obtained a release of such preferential right from the Commissioner. . . ."

The Trustees were not made parties to the State Court action.

On September 25, 1973, the Trustees filed in this Court a petition (Document No. 6293) seeking an order "restraining the Department of Transportation of the State of New York from interfering with the salvaging of the Lake Placid Branch," and sought to obtain a stay of the State Court hearing scheduled for September 28. Following a conference in chambers, I declined to interfere with the scheduled hearing in the Albany County Court, but fixed a hearing on the Trustees' petition for October 1, 1973. At the hearing, the Court was advised that the Albany County Court had deferred decision on the preliminary injunction pending the outcome of the proceedings in this Court, but had continued the temporary restraining order.

At the hearing in this Court, it became apparent (a) that no private entity or governmental agency is now interested in acquiring the Lake Placid Branch, with the possible exception of the Department of Transportation of the State of New York; (b) that such interest might be revived if a proposed $3.5 billion transportation bond issue were to be approved by the voters at the election of November 6, 1973; and (c) that the Secretary of Transportation of the State of New York was "seriously considering" the possibility of purchasing the Lake Placid Branch, if the bond issue should be approved. An authorized representative of the Commissioner of Transportation of the State of New York advised the Court that, if the bond issue were approved, the Commissioner would be in a position to reach a final decision by December 1, 1973.

In a preliminary ruling from the bench at the close of the hearing, I expressed the view that § 18 of the New York Transportation Law appeared to have been satisfied by reason of the extensive negotiations between the parties, but that in any event the statute did not apply to the removal of rail for reuse in other parts of the Debtor's rail system. I ruled that there was thus no legal basis for precluding the Trustees from carrying out the contract with Young-Posen, Inc. However, in deference to the public interest represented by the Commissioner of Transportation, I ruled that, until the Commissioner of Transportation made a final decision on the acquisition questions (assuming the transportation bond issue was approved on November 6, 1973), the Trustees should be limited to the removal of 25 miles of reusable rail (the quantity which they estimated they would be able to remove and use in the time involved), and that none of the materials to be sold to Young-Posen, Inc. or others should be removed from the property. I stated that an appropriate order would be entered to carry out these views.

Thereafter, the Court was informally advised that the solution outlined above would be impracticable. It appears that salvage and scrapping operations must be conducted continuously, from one end of the line to the other, and that it would not be feasible to remove only the reusable track. In view of this all-or-nothing situation, I have withheld the entry of an order disposing of the Trustees' petition until the results of the November 6 referendum on the New York transportation bond issue were known.

I now take judicial notice of the fact that the voters disapproved the proposed transportation bond issue, in the November 6 referendum. Thus, it is now clear that, as a practical matter, acquisition of the Lake Placid Branch by the Commissioner of Transportation, or by anyone else, for operation as a railroad, is now out of the question. There is no

reason to preclude the Trustees from dismantling the line and obtaining the desperately needed replacement rail.

In amplification of the views expressed from the bench at the October 1 hearing, I note that § 18 of the New York Transportation Act, quoted above, appears intended to apply to real estate, rather than tracks, ties and other equipment; that salvagable materials kept by the Debtor and used elsewhere in its system are not being disposed of within the meaning of the statute; that the negotiations during and since the ICC abandonment proceedings amounted to a tender of the property to the Commissioner of Transportation; that the actions of the Commissioner in failing to attempt to acquire the property amounted to a release of his preferential right under the statute; and that, in any event, in view of the limitations imposed by the Constitution and by federal supremacy and Congressional preemption through the Interstate Commerce Act, the New York Transportation Act cannot validly be interpreted to preclude disposition of abandoned rail property after a reasonable period for the exercise of the Commissioner's preferential right has expired. I am also of the view that the litigation instituted by the Commissioner of Transportation improperly interferes with the reorganization of the Debtor. It is unnecessary to express a view as to the further issue of the invalidity of the temporary restraining order by reason of the absence of a necessary party.

For all of the foregoing reasons, an order will be entered granting the Trustees' petition. It is understood, however, that all bridges will be left intact until all of the other salvage work is completed, so as to afford to state and local interests the greatest possible opportunity for acquisition of the property for highway or recreational or other public uses.

## ORDER NO. 1372

And now, this 9th day of November, 1973, upon consideration of the "Petition of Trustees for Order Restraining the Department of Transportation of the State of New York from Interfering with Salvaging of the Lake Placid Branch" (Petition), and after a duly noticed hearing thereon, this Court FINDS (as more fully elaborated in the accompanying Memorandum), that:

1. The safe and economical operation of the Trustees' railroad system requires the prompt salvaging of the Lake Placid Branch.

2. The prompt salvaging of the Lake Placid Branch is in the best interests of the estate of the Debtor.

3. Attempts by the Department of Transportation of the State of New York (NY DOT) to delay or prevent the salvaging of the Lake Placid Branch, as described in the Petition, constitute an interference with the operation of the Trustees' railroad and the property of the Debtor's estate in violation of paragraph 9 of Order No. 1 herein.

Wherefore, It is hereby ORDERED that:

1. NY DOT and any agent thereof, including the Commissioner of Transportation of the State of New York, is directed forthwith to cease and desist and to refrain from interfering with or attempting to prevent, in any manner, including the prosecution or institution of any actions in any other courts, whether directed against the Trustees or their contractors, agents or employees, the salvaging of the Trustees' Lake Placid Branch between Remsen, New York, and Lake Placid, New York.

2. NY DOT is directed forthwith to withdraw with prejudice the petition of Raymond T. Schuler, Commissioner of Transportation of the State of New York, for temporary and permanent injunctions against Young-Posen, Inc., dated and filed September 21, 1973 (In the Matter of Application of Raymond T. Schuler, Commissioner of Transportation of the State of New York, at a Special Term of the Supreme Court of the State of New York, held in and for the County of Albany) and forthwith to

take all action necessary to have vacated the Order of Harold J. Hughes, Justice, dated September 21, 1973 (In the Matter of Raymond T. Schuler, Commissioner of Transportation of the State of New York at a Special Term of the Supreme Court of the State of New York, held in and for the County of Albany), enjoining and restraining Young-Posen, Inc. from salvaging the Lake Placid Branch.

3. The Trustees are authorized forthwith to take all actions necessary and proper, in accordance with Orders Nos. 602 and 1227 herein, to salvage the Lake Placid Branch.

4. This Court retains jurisdiction over the implementation of the terms of this Order.