Huntington *v.* Whaley.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial.

*Hubbard* and *Peet*, in support of the motion.

*G. C. Woodruff* and *Granger*, contra.

The court advised that no new trial be granted.

———⦁←⟶⦁———

# SUPREME COURT OF ERRORS.

## NEW LONDON COUNTY, OCTOBER TERM, 1860.

### Present,

STORRS, C. J., HINMAN, ELLSWORTH, AND SANFORD, Js.

---

LOUISA M. HUNTINGTON AND OTHERS *vs.* LEVI G. WHALEY.

The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner.

No title by such possession can be acquired unless the party has the actual use and occupation of the land, nor unless the owner has so lost his possession that he can maintain an action to recover it.

Where the divisional fence between the lands of *A* and *B* was a stone wall, three feet wide, set wholly on the land of *A*, and *B* had for more than fifteen years held exclusive possession of his own land up to the wall, treating the centre of the wall as the dividing line and believing it to be so, but with no knowledge of such claim on the part of *A*, and no other possession of the ground covered by the wall, it was held that there was not a sufficient adverse possession to vest in *B* a title to the centre of the wall.

EJECTMENT, tried to the jury on the general issue.

On the trial it appeared that the plaintiffs and the wife of the defendant were adjoining proprietors of land, and that the defendant was rightfully in the possession of the land belonging to his wife, and the only question between the parties related to the divisional line between these adjoining lands. It was proved and admitted that for more than sixty years before the 1st of April, 1850, there had been a stone wall, about three feet in width, that had during all that time served as a divisional fence between these proprietors and those under whom they claimed title respectively. The plaintiffs claimed and offered evidence to prove that the wall was not on the true line, but stood entirely on their own land, and that the true line was on the west side of the wall. The defendant claimed and offered evidence to prove that the centre of the wall was the true line. The defendant, to establish a title in his wife to the centre of the wall, offered evidence tending to prove, and claimed that he had proved, that she and all those under whom she claimed to have derived her title, since April 7th, 1823, had used and occupied the land on the west side of the wall in all respects as their own property, and denying the title of every other person, supposing and claiming that the centre of the wall was the true line, and had always during all that time treated the wall as the true line between the lands. But there was no evidence to show that the wall, or the land covered by it, or any part of it, was ever otherwise occupied by the defendant, or those under whom he claimed, than as a divisional fence between the lands, until April, 1850, when the defendant took down a part of the wall and set a barn near to the centre of it; nor was there any evidence that the plaintiffs, and those under whom they claimed title, had any knowledge of the claim of the defendant, and those under whom he held, that the centre of the wall was the boundary line between the lands, except such knowledge as is to be inferred from the use and occupancy of the land in the manner before stated. The defendant claimed that the adverse use and occupancy of the land on the west side of the wall, by himself and those under whom he claimed title, in the

manner and under the circumstances stated, vested in his wife a title to the demanded premises to the centre of the wall, and requested the court so to charge the jury. The plaintiffs claimed that no title could be acquired by such occupancy, and requested the court so to charge the jury. The court charged the jury that if they should find that the defendant, and those under whom he claimed title, had occupied the land on the west side of the wall up to the wall, supposing and believing the wall to be the dividing line between the lands in question, and had always treated the centre of the wall as the dividing line without objection, such occupancy would be presumptive evidence of the place of the true line; and that if they should further find that such occupancy had been continued adversely for a period of fifteen years, the occupants all the time treating the land as their own and denying the title of every other person, and that the plaintiffs had acquiesced in such occupancy, then the defendant had acquired a title by possession to the centre of the wall.

The jury returned a verdict in favor of the defendant, and the plaintiffs moved for a new trial.

*Hovey* and *Halsey*, with whom was *Wattles*, in support of the motion.

The possession by the defendant and those under whom he holds, of the land on the west side of the wall, in the manner and under the circumstances stated in the motion, did not establish in them a title to the centre of the wall. 1st. A title to land by possession can be acquired only by actual occupation for a period of fifteen years, under a claim of right, and in opposition to the constructive possession of the legal proprietor. The occupation must be visible, notorious, within well defined boundaries, and of such a character as to exclude the exercise of ownership by him who has the real title; and it must be hostile in a sense that indicates an intent to hold exclusive possession. 1 Swift Dig., 162. 2 Greenl. Ev., § 430. 2 Smith's Lead. Cas., 416 *b*. Ang. on Limitations, §§ 390, 391, 392. *Watrous* v. *Southworth.* 5 Conn., 305. *French* v. *Pearce*, 8 id., 439. *Proprietors of Kennebunk Purchase* v.

*Springer,* 4 Mass., 416. *Jackson* v. *Schoonmaker,* 2 Johns., 234. *Miller* v. *Platt,* 5 Duer, 277. 2d. A mere claim of title unaccompanied by adverse possession, does not confer upon the party asserting it, a right to the land to which it applies. Ang. on Limitations, § 392. *Abell* v. *Harris,* 11 Gill & Johns., 371. 3d. Where a person claims land by adverse possession, his title is limited to the boundaries of his actual, exclusive occupation, and can not extend beyond those boundaries. *Watrous* v. *Southworth,* supra. *Hart* v. *Chalker,* 5 Conn., 311. *Proprietors of Kennebunk Purchase* v. *Springer,* supra. *Potts* v. *Gilbert,* 3 Wash. C. C., 475. *Riley* v. *Jameson,* 3 N. Hamp., 23. Ang. on Limitations, § 392.

*Wait* and *Pratt,* contra.

Where a person occupies land to the side of a stone wall, ditch, unnavigable river, or other divisional fence between him and the adjoining proprietor, the presumption of law is that the centre of such divisional fence is the true dividing line, and such presumption and inference of law can only be rebutted by proof of an express limitation or restriction of such occupancy. *Warner* v. *Southworth,* 6 Conn., 471. *French* v. *Pearce,* 8 id., 439. *Champlin* v. *Pendleton,* 13 id., 23. *Burrell* v. *Burrell,* 11 Mass., 296. *Ex-parte Jennings,* 6 Cowen, 518. 3 Kent's Com., 432. *Stiles* v. *Curtis,* 4 Day, 328. The occupation need be only such as the nature of the land admits of, in order to constitute an adverse possession, especially if it be taken under color of title. In this case there was not only a legal inference of occupation, but it was in evidence, and the jury have found, that the defendant claimed and believed that his land extended to the centre of the wall as the dividing line, for a period of more than fifteen years, and that such occupation had been continued adversely for a period of fifteen years, the defendant all the while claiming the land as his own, and denying the title of every other person. Such occupation and possession are more than sufficient to satisfy the most rigid construction of the law of adverse possession. *Bryan* v. *Atwater,* 5 Day, 181. *Ewing* v. *Burnett,* 11 Peters, 41. *French* v. *Pearce,* 8 Conn., 439. Long continued acqui-

escence in, and practical location of a boundary line are con-
clusive upon the adjoining proprietors.    The jury have found
that the treatment of the centre of the wall by the defendant,
as the true dividing line, was not only without objection, but
with acquiescence on the part of the plaintiffs.    Such acqui-
escence is conclusive against them.    *Baldwin* v. *Brown,* 16
N. York, 359.    *Burrell* v. *Burrell,* 11 Mass., 296.

SANFORD, J.    We think the charge to the jury was errone-
ous.    The parties were adjoining proprietors of lands, the
plaintiffs owning on the east and the defendant on the west
side of the dividing line.    A stone wall three feet in thickness
had for sixty years served as a divisional fence.    The plaintiffs
claimed to be the rightful owners of the whole wall, and the land
on which it stood, up to the west side of the wall.    In April,
1850, the defendants took down the west side of the wall, and
set a barn near to the centre of it ; and the plaintiffs brought
this action of disseizin to vindicate their title and regain pos-
session.

They introduced evidence to prove that the wall was not
on the true line, but stood entirely on their own land, and that
the true boundary line between the tracts of land was on the
west side of the wall.    The defendant thereupon, instead of
denying the plaintiffs' original ownership, or setting up a para-
mount rightful title in himself, undertook to show that he had
acquired a title to the controverted property by possession.
And the court charged the jury that if the defendant and
those under whom he claimed title had occupied the land on
the west side of the wall up to the wall, supposing and believ-
ing the wall to be the dividing line between the lands in ques-
tion, and had always treated the centre of the wall as the
dividing line without objection, such occupancy would be pre-
sumptive evidence of the place of the true line between the
lands; and that if such occupancy had been continued adversely
for a period of fifteen years, the occupants all the time treat-
ing the land as their own, and denying the title of every other
person, and the plaintiffs had acquiesced in such occupancy,

then the defendant had acquired a title by possession to the centre of the wall.

Now it is to be observed, that the " occupancy " spoken of in the charge, is the occupancy of the defendant's undisputed property on the west side of the wall, up to the wall ; that by the defendants " treating the centre of the wall as the dividing line," nothing can be meant except his occupancy of his own land up to the wall, and his supposition and belief that the wall was the dividing line and that his title extended to the centre of it, because it is expressly stated in the motion that there was no evidence that the wall, or the land covered by it, or any part of it, was ever otherwise occupied by the defendant or those under whom he claimed, than as a divisional fence, until April, 1850, when he took down a part of it, as before mentioned. It is to be observed also, that there could have been no question regarding the plaintiffs' acquiescence in the defendant's claims to any part of the wall or the land on which it stood, because the motion shows that they had no knowledge of such claim ; no direct evidence of such knowledge being offered, and the fact of the defendant's occupation up to the wall affording no ground for an inference that the plaintiffs knew that he claimed to the centre of it.

The simple question therefore is, whether by the mere adverse occupancy of the defendant's land *up to the wall,* he supposing and believing that the line was in the centre of the wall, a title by possession to the centre of the wall could be acquired. A title to land by possession is acquired under the operation of our statute of limitations. That statute provides, that " no person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same shall first descend or accrue, and every person not entering as aforesaid, and his heirs, shall be entirely disabled to make such entry afterwards." Rev. Stat., tit. 31, § 1. The statute, says Judge Swift, is construed to bar not only the right of entry but of action also, and to divest the former owner of his title, and vest it in him who is in actual possession at the end of fifteen years ; so that though it is in terms a statute of limitations merely, yet it operates to transfer a title from one person to

another.　1 Swift Dig., 162.　But it is obvious that until the owner of land has been disseized and deprived of his possession he has no occasion to make an entry, and consequently can not lose his title by the operation of the statute.　He must be disseized, ousted and turned out of possession before the statute can begin to operate on his rights.　*Margaret Podgers' case*, 9 Coke, 106, *a*.　3 Cruise Dig., 484.　Thus a disseizin ripens into a good title by lapse of time, only when the disseizor has had an actual, open possession and use of the land in controversy, adversely to the title of the owner.　2 Greenl. Ev., § 557.　No title by possession can be acquired unless the party has the actual use and occupation of the property, nor unless the owner of it has so lost his possession that he can maintain an action to regain it.　1 Swift Dig., 162. *Proprietors of Kennebunk Purchase* v. *Springer*, 4 Mass., 418. 2 Bouvier's Institutes, § 2193.　*Brimmer* v. *Proprietors of Long Wharf*, 5 Pick., 135.　In the case at bar the defendant set up a title acquired by possession ; and whether he had thus acquired such title was the only question presented to the court.　He claimed no possession or actual use of any portion of the wall, or of the land on which it stood, prior to 1850.　The motion states that " the wall had served as a divisional fence," but it was the west side of it, not the centre, that had so served the defendant, bounding and forming the limit of his actual occupancy.　He had neither rebuilt the wall, repaired it, nor done any other act inconsistent with the plaintiffs' uninterrupted possession, or with their entire control and dominion over it.　His admitted and rightful occupancy of the adjoining land up to the wall, was an entirely different thing from that actual occupancy of the disputed property which was indispensable to the acquisition of a title to it by possession.

That he believed and claimed that his title extended to the centre of the wall is of no importance to this issue, so long as he did no overt act in the assertion or vindication of his claim, and so long as the plaintiffs' possession remained undisturbed. No ouster, disseizin or dispossession of the plaintiffs could have been effected by the defendant's claiming title or possession,

whatever his own supposition or belief might be regarding it. And even if the plaintiffs had been apprised of the defendant's claim, their own title could not have been affected by such claim, because, their possession being undisturbed thereby, they could have maintained no action on account of it.

It is to be constantly born in mind that the defense rested entirely on the claim of an acquisition of title to the controverted property by possession, which presupposes that the real original title was not in the defendant, or those under whom he claimed, but in the plaintiffs or some other person. The plaintiffs claimed that they had shown a title to the entire wall and the land on which it stood, and the defendant did not deny that claim. He only contended that the plaintiffs had been so long ousted of their possession of the property, and it had been so long in the adverse possession of himself and those under whom he claimed, that the plaintiffs had lost their right of entry and of action by lapse of time, and he had gained a title by adverse occupancy or possession. The suggestion in the charge therefore, that the defendant's occupancy of his own land in the manner claimed would be presumptive evidence of the place of the true line between the lands, seems to have had no application to the issue, and we think it was calculated to mislead the jury. The only legitimate inquiry for the jury was, whether the defendant, and those under whom he claimed, had, for the period of fifteen years, had the actual, open, adverse occupancy and possession of the controverted property, claiming it as their own, and actually excluding all other persons from its possession ; and there was no presumption, either of law or of fact, that the property was out of the possession of its real owner, or in the adverse occupancy of the defendant or any other person.

The doctrine of adverse possession is to be taken strictly. An adverse possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner. *Jackson* v. *Sharp*, 9 Johns., 167.

The instruction given to the jury, that, by the defendant's occupancy of his own land up to the wall, in connection with

his belief and claim of title to the centre of it, he could acquire a title to the controverted property beyond his actual occupancy, was erroneous, and a new trial should be granted.

In this opinion the other judges concurred.

New trial advised.