[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Angela D. Charron brought this action against the abutting owner Daniel G. Stoughton and James J. and Constance E. Barber, abutters of Stoughton, claiming adverse title to and a temporary and permanent injunction with regard to the use of an L-shaped strip of land, twelve feet in width and running along the southerly and westerly boundaries of her property.
The plaintiff at the inception of the suit placed a lis pendens on the entire Stoughton property. The court, (Dranginis, J.) on May 1, 1989 approved an agreement of the parties to "without prejudice" release the lis pendens to all of the abutting Stoughton land with the exception of the "disputed strip" as shown on Exhibit A appended to the complaint, and further that a temporary injunction issue with regard to the use of the strip until June 5, 1989 for the purpose of hearing a motion to dissolve the injunction and/or to set a bond. On December 22, 1989, the court, (Moraghan, J.) entered an order continuing the temporary injunction until April 1, 1990, subject to the plaintiff filing a bond in the amount of five thousand dollars ($5,000.00) on or before that date. By agreement of counsel and without prejudice the temporary injunction has continued to remain in effect up to the date of trial. Ms. Charron withdrew the action against the Barbers immediately before testimony began on the first day of CT Page 11606 trial.
The acts of adverse possession relied upon by the plaintiff began in 1954 when she married Earl Charron and moved to his home at 171 Colebrook River Road in Winchester. The plaintiff has resided in the property continuously since that time. The plaintiff became a joint owner of the property in 1972 and then sole owner when her husband Earl, died in 1980.
In support of her adverse possession claims, the plaintiff relies upon open and obvious actions which she and her husband have taken to demonstrate possession of their lawn. These actions include mowing, weeding, and raking as well as planting and caring for trees. Their use of the property has been for recreation and for picnics and family gatherings, particularly under and near the grove of evergreen trees at the southwest corner of the property. These actions were carried out in an open manner without permission from the defendant or his predecessors and without any attempt to prevent or interrupt the use.
Actions to quiet title are authorized by Conn. Gen. Stat. 47-31. When title is obtained by adverse possession, the true owner is barred by the statute of limitations, Conn. Gen. Stat. 52-575, from making entry into the subject property.
The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of possession and kept out uninterruptedly for a period of fifteen (15) years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right. Ruick v. Twarkins, 171 Conn. 149, 155 (1976).
The burden of proof on an adverse possession claim is clear and positive proof. Roche v. Fairfield, 186 Conn. 490, 498 (1982). The phrase "clear and positive proof" embodies the same substantive standard as the phrase "clear and convincing proof". Wildwood Associates, Ltd. v. Esposito,211 Conn. 36, 42 (footnote 3) (1989). This does not require that proof establishing the claim be based entirely on direct evidence; the trier may use inferences logically and reasonably drawn from established facts. Woycik v. Woycik, 13 Conn. App. 518, 520-524 (1988). Whether or not the actions of the plaintiff were sufficient to constitute adverse use of the defendant's property is a question of fact for the trier. Padula v. Padula,138 Conn. 102, 110 (1951).
A mistaken belief by the adverse possessor that he owned the property when he entered into possession is immaterial in an action for title by CT Page 11607 adverse possession as long as the other elements of adverse possession have been established. Paletsky v. Paletsky, 3 Conn. App. 587 (1985). Specific intent to deprive the true owner of his property is not required. Public Storage, Inc. v. Eliot Street Limited Partnership, 20 Conn. App. 380,384 (1989).
"The doctrine of adverse possession is to be taken strictly. An adverse possession is not made out by inference, but by clear and positive proof. Every presumption is in favor of the possession in subordination to the title of the true owner." Huntington v. Whaley, 29 Conn. 391, 398
(1860).
 Where title is claimed by adverse possession, the burden of proof is on the claimant . . . (Citations omitted) The essential elements of the adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . .(Citations omitted) me use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . The doctrine of adverse possession is to be taken strictly. (Citations omitted). Roche v. Fairfield, 186 Conn. 490, 498 (1982).
 The doctrine of adverse possession is a creature of legislation, and was not recognized at common law. . . . The essential elements of an adverse possession under Connecticut law are that the legal owner shall have been ousted of his possession and kept out uninterruptedly for the statutorily required period of fifteen years under a claim of right by an open, visible and exclusive possession by the claimant without a license from the owner. Such a possession may not be established by inference, but only by clear and positive proof, with the burden on the claimant.
Conn. Bar Journal, Vol. 66, pages 303-304 (1992).
Connecticut law has long recognized the concept of taking. Adverse possession continued in an uninterrupted way for fifteen (15) years is sufficient whether it be by more than one title holder provided the possessions are connected and continuous and the true owner has not constructively intervened between them; it must be accompanied by a transfer in fact. Smith v. Chapin, 31 Conn. 530, 531 (1863).
The land in question is shown on a map prepared by John DiCara, CT Page 11608 Registered Land Surveyor. It is a strip of land 12 feet wide running from Colebrook River Road back 175 feet to the balance of defendant's property. This strip separates the plaintiff's property from that of James J. and Constance E. Barber and passes within 12.9 feet of the plaintiff's house. Also, involved is a strip of the plaintiff's lawn approximately 12 feet wide on the westerly side of the plaintiff's lawn.
These strips of land have been treated by the plaintiff as her own ever since she married Earl Charron and moved into the house in 1954. Earl Charron acquired title to the house and lot in 1950. He remained sole owner until 1972 when he conveyed a survivorship interest to the plaintiff. Upon Earl's death in 1980, the plaintiff became the sole owner. She and her husband and family have mowed, weeded and raked the grass exclusively since 1954. In addition to the care of the lawn the plaintiff and family planted and cared for a maple tree situated within the strip which is now 24 inches in diameter. It was planted by plaintiff's husband soon after their marriage in 1954. Prior to his death, the plaintiff's husband took care of the tree, and since his death, the plaintiff has hired a tree service to care for it. The plaintiff and her family have used the property for picnics and family gatherings. There is a pine grove in the strip which provides shade in the summer and has been ideal for family parties.
At no time has the defendant or his predecessors used the property since 1954. The only use to which the strip could have been put by the defendant would have been access to the balance of defendant's land.
Laura J. Whyte testified that she lived across the road from the plaintiff's property from 1955 until 1968. Her father, Frank Pasini, owned a farm there. He also owned the property behind the plaintiff's house and cut hay there once a year. In order to get to the hay field, Mr. Pasini and Laura would drive haying equipment across the road and up between the Charron and Barber properties. Mrs. Whyte was unsure of the exact route, but was certain that they never drove on Mrs. Charron's lawn. She also assumed that the pine trees belonged to Mrs. Charron.
Although she originally drew a red line on a map showing the route of travel, she later drew a black line showing what she recalled to be the "straight" route which she recalled taking. The only reason that she drew the angled red line is the map showed the boundary lines and she assumed that was her path. Her recollection is that the path went straight back from the road and they did not have to turn to avoid anything in the path. This means the only possible path would have been totally on the Barber's property following the black line drawn by Laura Whyte on the exhibit. In other words, they would have had to go well to the south of the maple tree and pine grove located within the disputed property. This testimony CT Page 11609 does not help the defendant's case at all.
Further, Laura Whyte's personal knowledge of her father's haying ended in 1968. She knew that haying continued until 1976, but had no knowledge of the route taken to get the hay. Laura Whyte's testimony regarding access ends in 1968. The plaintiff only needs to show exclusive use for fifteen years. The plaintiff's case was brought in 1989 so that exclusive use for fifteen years. The plaintiff's case was brought in 1989 so that exclusive use since 1974 is sufficient.
Finally, Mrs. Constance Barber and her husband James Barber testified for the plaintiff and substantiated the testimony of Mrs. Charron and her witnesses. In fact, had the case not been withdrawn against the Barbers, the plaintiff would have been entitled to judgment quieting title against them.
The court finds based upon the evidence that the plaintiff has proved by clear, positive and convincing evidence all the elements of adverse possession. Judgment may enter quieting title to the property in question in the plaintiff. Counsel for the plaintiff shall prepare a proposed judgment for the court's consideration.
PICKETT, J.