******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MONA S. MULVEY, TRUSTEE *v.*
# STEFAN PALO ET AL.
## (AC 46383)

Elgo, Seeley and Westbrook, Js.

*Syllabus*

The plaintiff sought a declaratory judgment of adverse possession with respect to a portion of certain real property owned by the defendants. The defendants filed a counterclaim in which they sought to quiet title to the disputed portion of their property. At trial, the plaintiff submitted into evidence a general location survey prepared by R, a licensed land surveyor, which identified a wooded area and a lawn area on the disputed property. Other evidence at trial established that there was a third area on the disputed property, generally referred to as the muddy area, which straddled the wooded area and the lawn area. The trial court rendered judgment for the defendants. On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the trial court erroneously concluded that she failed to establish her claim of adverse possession with respect to all areas of the disputed property: although the court found that the plaintiff's late husband, S, had previously demonstrated possession of some areas on the disputed property, the court expressly found that no activities of any consequence occurred in the muddy area, and that finding was supported by the evidence in the record; moreover, there was no evidence that any member of the plaintiff's family posted signs or installed fencing on the disputed property generally or the muddy area specifically, the plaintiff's son, J, testified that S had not maintained the existing stone walls that abutted and intersected the disputed property, and the general survey prepared by R identified only two of the three areas of the disputed property; furthermore, although the court found that S created an access path on the disputed property, it did not find that that path traversed the muddy area, J did not identify the location of that path with any precision in his testimony, and he admitted that the path no longer existed, that he never took any measurements to determine its location, and that he could only provide an estimate of where it previously was located.

2. The plaintiff could not prevail on her claim that the trial court erroneously concluded that she failed to establish the boundaries of the areas of the disputed property with reasonable certainty: the survey prepared by R and admitted into evidence was of general character, was predicated on information furnished by J rather than R's own observations of the disputed property, did not identify all three areas of the disputed property, and did not delineate the boundaries of either of the two areas that were labeled as having been maintained by the plaintiff's family; moreover, R testified that he did not measure the wooded or lawn areas

and did not know the square footage of either area, that he did not stake any of the areas in the disputed property, and that he would not advise a property owner to rely on the general survey to transfer title to the disputed property without further work; furthermore, J was unable to provide any specifics regarding the precise boundaries of the wooded area, the lawn area, or the muddy area.

Argued March 11—officially released July 2, 2024

*Procedural History*

Action seeking a declaratory judgment of adverse possession over certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where Bank of America, N.A., was cited in as a defendant; thereafter, the named defendant et al. filed a counterclaim; subsequently, the case was tried to the court, *Hon. John F. Kavanewsky, Jr.*, judge trial referee; judgment for the defendants on the complaint and for the named defendant et al. on the counterclaim, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph DaSilva, Jr.*, with whom, on the brief, was *Marc J. Grenier*, for the appellant (plaintiff).

*Jason A. Buchsbaum*, with whom were *David A. Ball* and, on the brief, *Marc J. Herman*, for the appellees (defendants).

*Opinion*

ELGO, J. The plaintiff, Mona S. Mulvey, trustee of the Mona S. Mulvey Trust (trust), appeals from the judgment of the trial court rendered in favor of the defendants, Stefan Palo, Ema Palo, and Bank of America, N.A.,[1] on both her adverse possession claim

---

[1] Stefan Palo and Ema Palo were named as defendants in the plaintiff's original complaint. The plaintiff thereafter filed a motion to cite in Bank of America, N.A., as a necessary party due to its interest in the property in question as a mortgage holder, which the court granted. The plaintiff then filed an amended complaint to include Bank of America, N.A., as a defendant. For purposes of clarity, we refer to Stefan Palo and Ema Palo collectively as the defendants in this opinion.

and the defendants' quiet title counterclaim. On appeal, the plaintiff claims that the court improperly concluded that she failed to establish (1) her claim of adverse possession with respect to all areas of the property in question and (2) the boundaries of those areas with reasonable certainty.[2] We disagree and, accordingly, affirm the judgment of the trial court.

As the court found in its memorandum of decision, the plaintiff has owned real property in Norwalk known as 7 Grey Hollow Road in some manner since 1966.[3] The defendants own an abutting property to the south known as 1 Grey Hollow Road (defendants' property). This dispute concerns a 0.22 acre portion of the defendants' property (disputed portion) located on its northern boundary with the plaintiff's property.[4]

[2] The plaintiff also claims that the court misapplied the fifteen year requirement for a claim of adverse possession. See General Statutes § 52-575; *Caminis* v. *Troy*, 300 Conn. 297, 311, 12 A.3d 984 (2011). In light of our resolution of the principal claim in this appeal, we need not address that alternative contention. See *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 651, 905 A.2d 1256 (2006) ("insofar as proof of all elements is necessary, a determination that the court's decision was proper as to any given element is fatal to the [adverse possession] claim").

[3] The plaintiff and her late husband, David Mulvey, Sr. (David Sr.), purchased 7 Grey Hollow Road in 1966 as joint tenants with rights of survivorship. When David Sr. died in 1996, the plaintiff became sole owner of that property. In 2015, she transferred the property to herself, as trustee of the trust, by quitclaim deed.

In this regard, we note that, "[i]f one party's period of use or possession is insufficient to satisfy the fifteen year requirement, that party may tack on the period of use or possession of someone who is in privity with the party, a relationship that may be established by showing a transfer of possession rights." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 300 Conn. 297, 310 n.14, 12 A.3d 984 (2011). Although the plaintiff brought the present action in her capacity as trustee of the trust, there is no dispute that she can tack on the period of time in which she allegedly possessed the property in question in an individual capacity.

[4] The plaintiff concedes that the disputed portion is not within the description of the 7 Grey Hollow Road property in her deed. As the court noted in its memorandum of decision, "[t]he deed by which [the plaintiff and her late husband, David Mulvey, Sr.] acquired title [to 7 Grey Hollow Road] in 1966 references a survey done in 1965. That survey defines the [7 Grey

The defendants purchased their property on June 29, 2020. Approximately three months later, they were served with the plaintiff's complaint, which alleged one count of adverse possession. In response, the defendants filed an answer, a special defense of "waiver and/or estoppel," and a counterclaim, in which they sought to quiet title to the disputed portion of their property pursuant to General Statutes § 47-31. In answering that counterclaim, the plaintiff alleged, as a special defense, that she had ousted the defendants and their predecessors in interest from the disputed portion.

A two day trial followed, at which the plaintiff submitted into evidence a document titled "General Location Survey" (general survey) prepared by Zachary Rapp, a licensed land surveyor, that depicts the disputed portion of the defendants' property. On its top left corner are "Survey Notes," which state in relevant part that "[t]he sole intention of this map is to depict [the disputed portion]" and that the disputed portion "depicted hereon [was] physically identified in [the] field" by the plaintiff's son, David Mulvey, Jr. (David Jr.). The general survey identifies a "wooded area" on the westerly side of the disputed portion and a "lawn area" on its easterly side. The general survey also identifies various stone walls, including one that runs along the southerly side of the disputed portion.

As the court found, "[t]he topography of the [disputed portion] can best be characterized as partly lawn, partly as lightly wooded and a muddy area [of] an indeterminate size straddling the lawn and wooded areas." That finding is supported by photographs admitted into evidence at trial and various witnesses who offered testimony as to "the lawn area," "the wooded area," and "the muddy area" of the disputed portion. David Jr.

Hollow Road] property as a matter of record, and it does not include the disputed [portion] within that description."

testified that the muddy area was located "between" the lawn area and the wooded area shown on the general survey and "to . . . the east" of a vertical stone wall.

In its memorandum of decision, the court found that, during a nineteen year period from 1966 to 1985, the plaintiff's late husband, David Mulvey, Sr. (David Sr.), "demonstrated possession of *some areas* on the disputed [portion] as would an owner thereof. His children played within it. [David Sr.], with the help of [David Jr.], mowed, raked, planted flowerbeds, created an access path, removed fallen tree limbs and chopped wood on much of the disputed [portion]. All of these acts were certainly consistent with displaying a right of exclusive possession over the property. . . . It was done in an open and visible manner on a regular basis."[5] (Citation omitted; emphasis added.) Significantly, the court did not find that the plaintiff had demonstrated possession of all areas of the disputed portion of the defendants' property.

The court further found that the precise boundary lines of those areas over which David Sr. had demonstrated exclusive possession were uncertain and indeterminate. As the court stated, "[i]n resolving the present dispute, the court cannot identify the boundary lines of property supposedly acquired by adverse possession with any confidence." The court thus concluded that the plaintiff had not satisfied her burden of proof. Accordingly, the court rendered judgment in favor of the defendants on the adverse possession claim and the quiet title counterclaim, and this appeal followed.

As a preliminary matter, we note that, "[w]hen title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse

---

[5] The court also found that evidence of exclusive possession "was notably lacking" after "1985 or 1990."

possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . . The use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . In the final analysis, whether possession is adverse is a question of fact for the trier. . . . The doctrine of adverse possession is to be taken strictly."[6] (Internal quotation marks omitted.) *Dowling*

---

[6] Like Connecticut, a multitude of jurisdictions throughout the United States recognize that a claim of adverse possession, and the evidence submitted in support thereof, must be strictly construed against the party asserting that claim. See, e.g., *Mercer* v. *Wayman*, 9 Ill. 2d 441, 445–46, 137 N.E.2d 815 (1956) ("A party claiming title by adverse possession always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim, not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the statute of limitations. Claiming a benefit from his own wrong, his acts are to be construed strictly." (Internal quotation marks omitted.)); *Garrett* v. *Huster*, 684 N.W.2d 250, 253 (Iowa 2004) (doctrine of adverse possession is construed strictly); *Rozmarek* v. *Plamondon*, 419 Mich. 287, 292, 351 N.W.2d 558 (1984) ("[t]he evidence offered in support of adverse possession must be strictly construed with every presumption being exercised in favor of the record owner of the land" (internal quotation marks omitted)); *Ganje* v. *Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003) ("[t]he evidence presented in support of adverse possession must be strictly construed" with every presumption against party claiming adverse possession); *Maddock* v. *Higgins*, 176 N.H. 182, 191, 307 A.3d 1104 (2023) ("[w]hen evaluating the merits of an adverse possession claim, courts must strictly construe the evidence of adverse possession"); *Crown Credit Co., Ltd.* v. *Bushman*, 170 Ohio App. 3d 807, 818, 869 N.E.2d 83 (2007) ("adverse possession is disfavored" and must be strictly construed); *Harris* v. *Southeast Portland Lumber Co.*, 123 Or. 549, 557, 262 P. 243 (1927) ("[e]vidence of adverse possession is always to be construed strictly" (internal quotation marks omitted)); *King* v. *Hawkins*, 282 S.C. 508, 511, 319 S.E.2d 361 (App. 1984) ("[t]he doctrine of adverse possession must be strictly construed in favor of the owner of the title to land"); *Gangle* v. *Spiry*, 916 N.W.2d 119, 125 (S.D. 2018) (evidence is strictly construed against party claiming adverse possession); *Foust* v. *Metcalf*, 338 S.W.3d 457, 466 (Tenn. App. 2010) ("[e]vidence of adverse possession is strictly construed and any presumption is in favor of the holder of the legal title"); *Hollingsworth* v. *Williamson*, 300 S.W.2d 194, 198 (Tex.

v. *Heirs of Bond,* 345 Conn. 119, 143, 282 A.3d 1201 (2022).

Clear and convincing proof of the elements of an adverse possession claim is an "exacting standard"; *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.,* 69 Conn. App. 839, 844, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002); that "lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true . . . ." (Internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito,* 211 Conn. 36, 42, 557 A.2d 1241 (1989); see also *Esposito* v. *Stackler,* 160 App. Div. 2d 1154, 1155, 554 N.Y.S.2d 361 (1990) (clear and convincing proof is "stringent and demanding standard"). In evaluating a claim of adverse possession under that demanding standard, "[e]very presumption is in favor of possession in subordination to the title of the true owner." (Internal quotation marks omitted.) *Woycik* v. *Woycik,* 13 Conn. App. 518, 522, 537 A.2d 541 (1988); see also 2 C.J.S. 783, Adverse Possession § 274 (2023) ("[E]very presumption is in favor of the holder of legal title . . . . Every presumption is against the [party claiming adverse possession] and none is in their favor." (Footnotes omitted.)). That presumption is rooted in the recognition that "there are no equities in favor of a person seeking to acquire property of another by adverse holding." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.,* supra, 848 n.4.

---

Civ. App. 1957) ("the evidence of adverse possession must be clear and positive, and should be strictly construed"); *Lindokken* v. *Paulson,* 224 Wis. 470, 475, 272 N.W. 453 (1937) ("[t]he rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner").

The demanding burden placed on a party claiming adverse possession of the property of another reflects the fact that such actions are disfavored. See, e.g., *Striefel* v. *Charles-Keyt-Leaman Partnership*, 733 A.2d 984, 988 (Me. 1999) ("the law disfavors the transfer of land by adverse possession"); *Rote* v. *Gibbs*, 195 App. Div. 3d 1521, 1523, 151 N.Y.S.3d 280 ("the law disfavors the acquisition of title by adverse possession"), appeal dismissed, 37 N.Y.3d 1106, 178 N.E.3d 1281, 157 N.Y.S.3d 402 (2021); *Amoorpour* v. *Kirkham*, 543 P.3d 677, 682 (Okla. 2023) ("[a]dverse possession claims are disfavored and are not to be made by inference"); *Woodward* v. *Valvoda*, 478 P.3d 1189, 1197 (Wyo. 2021) ("[a]dverse possession claims are disfavored in the law"). As the Supreme Court of Ohio explained, "[a]dverse [p]ossession represents the forced infringement of a landowner's rights, a decrease in value of the servient estate, the encouraged exploitation and development of land, the generation of animosity between neighbors, a source of damages to land or loss of land ownership, the creation of forced, involuntary legal battles, and uncertainty and perhaps the loss of property rights to landowners with seisin. . . . Accordingly, we have recognized that adverse possession is disfavored." (Citation omitted; internal quotation marks omitted.) *Houck* v. *Board of Park Commissioners*, 116 Ohio St. 3d 148, 155, 876 N.E.2d 1210 (2007). Moreover, "[a] successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. . . . [T]hat is why the elements of adverse possession are stringent." *Grace* v. *Koch*, 81 Ohio St. 3d 577, 580, 692 N.E.2d 1009 (App. 1998).

"[T]he question of whether the elements of an adverse possession claim have been established by clear and convincing evidence is a factual one subject to the clearly erroneous standard of review." *Rudder* v. *Mamanasco Lake Park Assn.*, *Inc.*, 93 Conn. App. 759,

785, 890 A.2d 645 (2006). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Internal quotation marks omitted.) *Skelly* v. *Brucher*, 134 Conn. App. 337, 341, 38 A.3d 261 (2012); see also *Pagano* v. *Ippoliti*, 245 Conn. 640, 654, 716 A.2d 848 (1998) ("[t]he trial court, having heard the testimony and observed the witnesses, was in a position far superior to ours to judge the evidentiary record as a whole"); *Katz* v. *Martin*, 143 Conn. 215, 217, 120 A.2d 826 (1956) ("To interfere with the [trial court's] conclusions would be to substitute different findings of facts. This cannot be done where there is evidence upon which reasoning minds might disagree. . . . It is not given to us to retry a case. . . . The case presented controversial issues of fact which were solely within the province of the trial court to decide." (Citations omitted.)); *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66 Conn. App. 397, 403 n.3, 784 A.2d 970 (2001) ("[w]e cannot substitute our view of the evidence for the trial court's finding"), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003).

In her principal appellate brief, the plaintiff raises two related, yet distinct, challenges to the facts found by the trial court. The plaintiff first asserts that she had proven her adverse possession claim with respect to "the entirety of the claim area," which claim is in conflict with, and presents a challenge to, the court's finding that she had done so only as to "some areas." The plaintiff also argues that the court's finding that the boundaries of any adversely possessed property were

"uncertain and indeterminate" is clearly erroneous. We address each argument in turn.

## I

The plaintiff contends that the court erroneously concluded that she failed to establish her claim of adverse possession with respect to all areas of the disputed portion. We disagree.

When a party seeks to acquire by adverse possession a portion of real property belonging to another, that party bears the burden of establishing exclusive possession over all areas of that portion. As this court has explained, "[w]hen not claimed under color of title, adverse possession is limited to the area of land actually possessed. . . . It can only extend as far as [the] claimant has actually occupied and possessed the land in dispute . . . and the adverse possession of one area may not be inferred from that of a separate area absent independent proof of occupation." (Citations omitted; internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 654, 905 A.2d 1256 (2006); see also *Skelly* v. *Brucher*, supra, 134 Conn. App. 343 ("the court determined that the defendants did not meet their burden of proving what *specific areas* of the plaintiffs' property the defendants and [their predecessors] had actually occupied" (emphasis added; footnote omitted)); *Lisiewski* v. *Seidel*, 95 Conn. App. 696, 707–12, 899 A.2d 59 (2006) (noting that "the plaintiff is entitled only to the portion of the disputed area that he actually occupied during the course of his adverse possession" and concluding that plaintiff had not established adverse possession over all areas of disputed portion of defendants' property).

In its memorandum of decision, the court found that the disputed portion of the defendant's property contained three different areas: the lawn area, the wooded area, and the muddy area. The court found that, from

1966 to 1985, David Sr. "demonstrated possession of *some areas* on the disputed [portion] as would an owner thereof. His children played within it. [David Sr.], with the help of [David Jr.], mowed, raked, planted flowerbeds, created an access path, removed fallen tree limbs and chopped wood on much of the disputed [portion]. All of these acts were certainly consistent with displaying a right of exclusive possession over the property. . . . It was done in an open and visible manner on a regular basis." (Citation omitted; emphasis added.) At the same time, the court expressly found that, in contrast to the activities conducted on other areas of the disputed portion, "[n]o activities of any consequence . . . occurred in [the] muddy area."

That finding is supported by the evidence in the record. At trial, David Jr. was asked what he had done "to maintain [the] muddy area"; he replied, "Nothing." David Jr. further confirmed that neither he nor any member of his family had made "any improvements" in that area. See, e.g., *Porter* v. *Schaffer*, 126 Md. App. 237, 277, 728 A.2d 755 (1999) ("something more than 'mere occasional use of land' is needed" to demonstrate adverse possession), cert. denied, 355 Md. 613, 735 A.2d 1107 (1999).

There also was no evidence that any member of the Mulvey family posted signs or installed fencing on the disputed portion generally or the muddy area specifically, which would have apprised the title owner of their purportedly hostile possession of that property.[7]

---

[7] As other courts have noted, an adverse possessor must "fly the flag over the [disputed portion] and put the true owner upon notice that his land is held under an adverse claim of ownership." (Internal quotation marks omitted.) *Snowden & McSweeny Co.* v. *Hanley*, 195 Miss. 682, 687, 16 So. 2d 24 (1943); see also *Barrell* v. *Renehan*, 114 Vt. 23, 29, 39 A.2d 330 (1944) (adverse possessor "must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest").

See *O'Connor* v. *Larocque*, 302 Conn. 562, 598, 31 A.3d 1 (2011) ("there is no evidence in the record that the plaintiff's possession and use of the lot was so openly and notoriously hostile that the defendant had notice of her adverse possession claim"); *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 23, 153 A.3d 669 (2016) (in case where court found adverse possession had not been established, defendant testified that "[h]e has never seen a chain, fence, sign, name on the pillars, or other circumstance that would suggest that the plaintiffs claimed possession of the contested area"); see also *Machado* v. *Southern Pacific Transportation Co.*, 233 Cal. App. 3d 347, 362–63, 284 Cal. Rptr. 560 (1991) (defendant posted "multiple signs on the perimeter of the property" stating "Private Property" and "No Trespassing" that "clearly [gave] notice that [the defendant] considered itself in possession and control of the property, and certainly raised the inference that [it] was asserting an ownership interest"); *Boneno* v. *Lasseigne*, 534 So. 2d 968, 973 (La. App. 1988) ("some substantial and readily observable physical signs [of adverse possession] must be present in order to make the action public; there must be some easily visible evidence which could place a possessor 'on notice' "). To the contrary, David Jr. testified at trial that neither he nor any member of his family ever posted signage or installed fencing on any part of the disputed portion.[8]

---

[8] At trial, the following colloquy transpired between counsel for Bank of America, N.A., and David Jr.:

"Q. You never place[d] any signage indicative of ownership to say no trespassing, keep out, private property, anything like that around the [disputed portion], right?

"A. No, sir.

"Q. And no such signs ever existed throughout your experience with the [plaintiff's] property since 1966?

"A. No, sir.

"Q. Okay. And no fences or walls, or anything like that were ever built by you or your parents to enclose the [disputed portion]?

"A. No, sir."

David Jr. further testified that David Sr. did not maintain the existing stone walls that abut and intersect the disputed portion. See *Rayburn* v. *Coffelt*, 153 Or. App. 76, 81, 957 P.2d 580 (1998) (concluding that "the continuous existence of [a] fence alone is insufficient to put defendants and their predecessors on notice of an adverse possession claim" when plaintiff "did not maintain the fence, post no-trespassing signs or take any other affirmative steps to put defendants on notice that the fence marked the boundary of his property").

Moreover, the general survey prepared by Rapp identifies only *two* areas on the disputed portion—what was labeled "wooded area maintained by Mulvey" on its westerly side and a "lawn area maintained by Mulvey" on its easterly side. Rapp testified at trial that he prepared that survey on the basis of information furnished to him by David Jr., rather than his own observations of the disputed portion. Yet the general survey does not include any mention of the muddy area, nor does it indicate where that area was located or whether it was maintained by any member of the Mulvey family. Rapp further testified that the muddy area was located "between the areas" that David Jr. had identified as ones that had been "maintained" by the Mulvey family. That evidence supports a finding that the plaintiff had not established her claim of adverse possession with respect to the muddy area by clear and convincing proof.

The plaintiff argues that, in his testimony, David Jr. offered evidence that David Sr. cleared leaves and maintained a path through the muddy area. Although the court in its memorandum of decision found that David Sr. "created an access path" on the disputed portion, it did not find that said path traversed the muddy area. Nor did David Jr. identify the location of that path with any precision in his testimony, other than to say that it was "between those [stone] walls" depicted in a central

location on the general survey. David Jr. admitted that the path no longer existed, that he never took any measurements to determine its location, and that he could only provide an estimate of where it previously was located.

David Jr. also testified that David Sr. used a tractor to access the wooded area. At the same time, David Jr. testified that the muddy area was caused by a "natural spring" that had "water bubble up from the ground." As he stated: "You could see the water coming up, and it has a flow to it." His sister, Lee Viteretto, also testified that the disputed portion, as depicted in photographs admitted into evidence, had "always looked like that" since she was a child, the only changes being that "[t]he trees are bigger" and that there was a "little bit" of overgrowth. In light of that testimony, the court reasonably could conclude that the path created by David Sr. to access the wooded area with a tractor did not traverse the muddy area.

Furthermore, "[t]he mere existence of evidence tending to support a rejected claim of adverse possession does not establish that the court's finding that the claim was not proven by clear and convincing proof is clearly erroneous." *Skelly* v. *Brucher*, supra, 134 Conn. App. 344; see also *Shepard Group, LLC* v. *Arnold*, 124 Conn. App. 41, 45, 3 A.3d 975 (2010) ("[t]he fact that there was evidence in support of the defendants' claim of adverse possession does not establish that the court's finding . . . is clearly erroneous"). As the sole arbiter of credibility, the court was free to accept or reject, in whole or in part, the testimony offered by David Jr. at trial.[9] See *Skelly* v. *Brucher*, supra, 345; see also 2 C.J.S.,

---

[9] We note that David Jr. admitted at trial that he was a beneficiary under the trust laying claim to the disputed portion and that he was involved in "the commencement of this lawsuit . . . ." As this court has observed in the adverse possession context, "[a] court properly may take into account testimony from a witness with an interest in the outcome of the case" and "is at liberty to discredit any witness . . . ." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, supra, 170 Conn. App. 26.

supra, § 295, p. 801 ("[e]vidence of adverse possession is strictly construed . . . against the person claiming a prescriptive right . . . and the testimony of [the] claimant or their witnesses need not be accepted at face value" (footnotes omitted)). In light of the foregoing, we conclude that the court's finding that the plaintiff failed to establish her claim of adverse possession with respect to *all* areas of the disputed portion is not clearly erroneous.

## II

The plaintiff also claims that the court erroneously concluded that she failed to establish the boundaries of the areas of the disputed portion with reasonable certainty. We do not agree.

In its memorandum of decision, the court found that the plaintiff had demonstrated exclusive possession over "some areas" of the disputed portion during a nineteen year period from 1966 to 1985. The court also found that the "precise boundary lines" of the areas over which David Sr. had demonstrated exclusive possession were "uncertain and indeterminate" and relatedly found that the muddy area was "an indeterminate size." The court thus concluded that it could not "identify the boundary lines of property supposedly acquired by adverse possession with any confidence."

The court's findings are supported by evidence in the record before us. The survey prepared by Rapp and admitted into evidence (1) was of general character,[10] (2) was predicated on information furnished by David Jr., rather than Rapp's own observations of the disputed portion, (3) did not identify all three areas of the disputed portion, and (4) did not delineate the boundaries of either of the two areas that are labeled "maintained

---

[10] We reiterate that the general survey is titled "General Location Survey." In its upper left corner, that survey specifically notes that "[t]he sole intention of this map is to depict [the disputed portion]" as "identified" by David Jr.

by Mulvey." Rapp testified at trial that he did not measure the wooded or lawn areas and did not know the square footage of either area. Rapp also testified that he did not stake any of the areas in the disputed portion. When asked if a property owner would be able to rely on the general survey to transfer title to the disputed portion, Rapp stated: "Without further work I would advise against it."

In his testimony, David Jr. likewise was unable to provide any specifics regarding the precise boundaries of the wooded area, the lawn area, or the muddy area. On cross-examination, David Jr. admitted that he was providing an "educated guess" as to certain locations in the disputed portion and stated: "I don't know what else to tell you, because I can't give you any numbers. And I can't give you measurements." In addition, both David Jr. and his sister testified that the boundaries of the wooded area were not readily discernable.[11] Their testimony, like the general survey, is not clear and convincing proof of the boundaries of the areas contained in the disputed portion.

When a party seeks to acquire by adverse possession a portion of real property belonging to another, that

---

[11] At trial, David Jr. testified that there were no markers or surveyor's stakes in the wooded area and that, as a child, he had "no idea" where the property lines of the wooded area were located. He testified that he assumed the westerly boundary was marked by a stone wall, which is shown on the general survey as being located on property belonging to a third party that is not included in the plaintiff's claim of adverse possession. His sister similarly testified that she did not know how far back the wooded area on which she played as a child extended.

David Jr.'s testimony that "[w]e thought the stone walls were the property lines" also is at odds with the demarcation of the disputed portion on Rapp's survey. On that survey, the westerly boundary of the disputed portion does not extend to the stone wall at the rear of wooded area but, rather, ends before that wall—most notably at its northwest and southwest corners. On cross-examination, David Jr. conceded that the westerly boundary that he identified to Rapp was based on a property line with a third party and not the stone wall.

party bears the burden of establishing exclusive possession over all areas to which it lays claim. See *Skelly* v. *Brucher*, supra, 134 Conn. App. 343; *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 97 Conn. App. 654; *Lisiewski* v. *Seidel*, supra, 95 Conn. App. 707–12. As our Supreme Court has observed, "[w]here a person claims land by adverse possession, his title is limited to the boundaries of his actual, exclusive occupation, and can not extend beyond those boundaries." *Huntington* v. *Whaley*, 29 Conn. 391, 394 (1860).

In the present case, the trial court found that the plaintiff established that David Sr. had exercised exclusive possession over "some areas" of the disputed portion, but not all. To prevail on her adverse possession claim, it therefore was incumbent on the plaintiff to provide clear and convincing evidence as to the boundaries of those areas. See, e.g., *Barrs* v. *Zukowski*, 148 Conn. 158, 166, 169 A.2d 23 (1961) (adverse possession claim failed due to plaintiffs' "inability to locate the proper boundary lines"); *Adametz* v. *Adametz*, Docket No. CV-98-0086469-S, 2002 WL 31172465, *5 (Conn. Super. August 27, 2002) ("[The] defendants' claim of adverse possession must fail . . . because they have not established the boundaries of the land claimed to have been acquired by adverse possession. It was their burden to do so."); *Miller* v. *Onorato*, Docket No. CV-92-0335319-S, 1996 WL 409226, *3 (Conn. Super. June 27, 1996) (rejecting defendants' adverse possession claim due to their "failure to depict an area which can be found to have been adversely possessed and which can be delineated by a trier"), aff'd, 45 Conn. App. 908, 693 A.2d 309, cert. denied, 243 Conn. 911, 701 A.2d 332 (1997); *Downing* v. *Bird*, 100 So. 2d 57, 64 (Fla. 1958) ("the limits, location, and extent of [a claimant's] occupation must be definitely and clearly established by affirmative proof" (internal quotation marks omitted)); *McClellan* v. *King*, 133 Ill. App. 2d 914, 916, 273 N.E.2d

696 (1971) ("clear and definite proof of the location of the land . . . is a prerequisite to obtaining title" by adverse possession); *Pokorski* v. *McAdams*, 204 Neb. 725, 731, 285 N.W.2d 824 (1979) ("[a] claimant of title by adverse possession must further show the extent of his possession [and] the exact property which was the subject of the claim" (internal quotation marks omitted)); see also 2 C.J.S., supra, § 260, p. 769 ("[a]dversely possessed property must be of fixed and definite boundaries"); id., § 271, p. 781 (burden on party claiming adverse possession to establish "the exact property which [is] the subject of the claim of ownership").

Requiring a plaintiff in an adverse possession action to provide clear proof of the precise boundaries of the real property in question is consistent with the precept that "[a] landowner claiming more property than the claimant's title reflects bears the burden of proof in [a] boundary dispute, while the neighboring adjacent landowners, relying on the title, do not bear the burden of proving the boundary." 11 C.J.S. 218, Boundaries § 186 (2021); accord *Steinman* v. *Maier*, 179 Conn. 574, 575, 427 A.2d 828 (1980) ("[t]he burden was on the plaintiff to fix [the] location" of boundary in dispute); *Velsmid* v. *Nelson*, 175 Conn. 221, 224, 397 A.2d 113 (1978) ("[a] plaintiff's claim may fail simply as a result of his or her inability to establish adequately the disputed boundary line"); *LaFreniere* v. *Gallinas*, 148 Conn. 660, 665, 174 A.2d 46 (1961) (plaintiff alleging possession of disputed area in boundary dispute "is obliged to locate the boundary line"); *Simmons* v. *Addis*, 141 Conn. 738, 741, 110 A.2d 457 (1954) ("[t]he burden of establishing the location of the boundary line where he claimed it to be was upon the plaintiff"). The court's finding in the present case that the plaintiff had not established with any reasonable certitude the boundaries of any areas over which she had claimed exclusive possession comports with that bedrock real property principle.

Requiring such proof is consonant with the maxim that a claim of adverse possession, and the evidence submitted in support thereof, must be strictly construed against the party who is seeking to forever alter the boundaries of the title owner's property. See *Dowling* v. *Heirs of Bond*, supra, 345 Conn. 143; *Huntington* v. *Whaley*, supra, 29 Conn. 398; see also footnote 6 of this opinion.

In the present case, the record substantiates the court's findings that the plaintiff failed to provide clear and convincing evidence "of the precise boundary lines of any property she may have otherwise by satisfying the elements of adverse possession" and that said boundary lines were uncertain and indeterminate. Those findings, therefore, are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.