MICHELE DI LEO, Respondent, *v.* PECKSTO HOLDING CORP. et al., Appellants, et al., Defendants.

Argued October 7, 1952; decided December 5, 1952.

*Charles A. Voss* for Pecksto Holding Corp. and another, appellants. I. Plaintiff, having by agreement divested himself of the alleged easement, may not claim a prescriptive right after the execution of said agreement. II. The evidence in support of plaintiff's alleged prescriptive right falls far short of the statutory requirements. (*Pirman* v. *Confer,* 273 N. Y. 357; *Van Roo* v. *Van Roo,* 268 App. Div. 170, 294 N. Y. 731.)

*Reuben Chase* for White Plains Terminal Corp. and others, appellants. I. There is no evidence to sustain the judgment against defendants White Plains Terminal Corp., Ida C. Butterworth, Arthur F. Riegel, Edward R. Riegel, Walter J. Riegel and Frank E. Donahue. II. Plaintiff had by deed divested himself of the alleged easement. III. Plaintiff may not claim a prescriptive right after the execution of said agreement. IV. The evidence in support of plaintiff's alleged prescriptive right falls far short of the statutory requirements. (*Van Valkenburgh* v. *Lutz,* 304 N. Y. 95; *Pirman* v. *Confer,* 273 N. Y. 357.)

*Wm. Burdell Banister* for respondent.  I. The actual physical occupation and improvement of the property furnished sufficient evidence of intent to hold adversely.  (*Belotti* v. *Bickhardt,* 228 N. Y. 296; *Monnot* v. *Murphy,* 207 N. Y. 240; *Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362; *Koch* v. *Ellwood,* 138 App. Div. 584; *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich,* 132 App. Div. 118, 200 N. Y. 533; *Trustees of Town of East Hampton* v. *Kirk,* 84 N. Y. 215; *Klin Co.* v. *New York R. T. Corp.,* 271 N. Y. 376; *Bushey* v. *Santiff,* 86 Hun 384; *Parker* v. *Foote,* 19 Wend. 309; *Nicholls* v. *Wentworth,* 100 N. Y. 455; *Hammond* v. *Zehner,* 21 N. Y. 118; *Colburn* v. *Marsh,* 68 Hun 269; *Ward* v. *Warren,* 82 N. Y. 265.)  II. The claim of adverse possession may continue unbroken by a succession of tenants. (*Belotti* v. *Bickhardt,* 228 N. Y. 296; *Timmerman* v. *Cohn,* 204 N. Y. 614; *Barnes* v. *Light,* 116 N. Y. 34.)  III. The boundary line agreement did not cut off or extinguish plaintiff's title in the right of way.  (*First Nat. Trust & Sav. Bank* v. *Smith,* 284 Mich. 579; *Ogden* v. *Straus Bldg. Corp.,* 187 Wis. 232.) IV. Defendants-appellants have utterly failed to show any basis whatsoever for reversal of the judgment. (*Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362; *Arnold* v. *New York, W. & B. Ry. Co.,* 173 App. Div. 764; *Koch* v. *Ellwood,* 138 App. Div. 584; *Barnes* v. *Light,* 116 N. Y. 34; *La Frombois* v. *Jackson,* 8 Cow. 589; *Belotti* v. *Bickhardt,* 228 N. Y. 296; *Monnot* v. *Murphy,* 207 N. Y. 240; *Abeel* v. *Van Gelder,* 36 N. Y. 513; *Smith* v. *Egan,* 225 App. Div. 586.)

FULD, J.  To expand his coal and masonry trade, Michele Di Leo in 1921 bought land in the Village of Port Chester from William Ryan Company.  To get to and from his property, Di Leo and his predecessor before him, from the year 1909 at least, traveled a path, stretching north 250 feet to Westchester Avenue, over lands now owned by Pecksto Holding Corp., Waef Realty Corp. and Port Chester Lumber Company.  For upwards of thirty-five years, until 1946, they so traveled without objection from anyone.  While some of the owners, across whose lands the path ran, also used it " once in a while ", Di Leo traversed it continuously, sometimes making 25 trips a day, at first with teams of horses, later with automobile trucks, to carry his goods. Such frequent traffic transformed the way into a definite road, 18 to 20 feet wide.

Di Leo alone maintained the right of way; it was he who straightened and rolled the path, kept it free of rock and other debris, laid stone over the driveway and filled in ruts and holes. No owner of any other land contributed in any way, physically or financially, to its maintenance or repair.

In 1946, Pecksto, White Plains — Waef's predecessor in title — and Port Chester Lumber, the then owners of the parcels between Di Leo's property and Westchester Avenue, agreed among themselves to establish a new right of way. The new way, intended for the contracting parties' use, was to extend across the property of White Plains and, if constructed, would have bisected and interfered with Di Leo's accustomed route. Shortly after this agreement was made, a considerable quantity of stone and gravel was placed on Pecksto's land just north of Di Leo's property, and an iron bar erected, which blocked the path and effectively barred his use of it.

Di Leo thereupon brought this action to establish his easement and to require removal of the obstructions. Joined as defendants were, not only the three parties to the 1946 right of way agreement, Pecksto, Port Chester Lumber and White Plains, but also Waef — the latter's purchaser — Cold-Mix — Pecksto's partial lessee — and holders of a first mortgage placed in 1947 on Waef's land.

After a trial, the court ruled in plaintiff's favor. Finding that the use of the right of way was " hostile under a claim of right, open, notorious, 'exclusive and continuous " and that it was along a well-defined route, the court concluded that a prescriptive right " ripened before 1931 ". From the resulting judgment — which (1) adjudged that plaintiff had a perpetual easement permitting his free and unobstructed use of a right of way extending from the northerly side of his property to Westchester Avenue and (2) ordered defendants, other than Port Chester Lumber, to remove from their respective properties " all obstructions * * * which encroach upon " that right of way and to refrain from interfering with plaintiff's " free ingress and egress over " it — all of the defendants, except Port Chester Lumber, appealed. The case is here, by our leave, following a unanimous affirmance by the Appellate Division.

In seeking a reversal, defendants advance a number of arguments: first, all of them urge that an easement by prescription may not be acquired unless the easement area has been " protected by a substantial inclosure " or has been " usually cultivated or improved ", as allegedly prescribed by section 40 of the Civil Practice Act; second, that plaintiff's use was not adverse; third, that, in any event, plaintiff had, by an agreement made in 1932, divested himself of any easement that he may have acquired; and, fourth, defendant White Plains and those defendants who are mortgagees of the parcel owned by defendant Waef assert that the judgment is improperly directed against them. We consider those several contentions.

Section 40 of the Civil Practice Act recites:

" For the purposes of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases, and no others:

" 1. *Where it has been protected by a substantial inclosure.*

" 2. *Where it has been usually cultivated or improved."* (Emphasis supplied.)

While this court has declared that it is " committed to the view that the doctrine of prescription is to be treated as the application to incorporeal rights of the Statutes of Limitations within the limits of the strong analogy between the two rules " (*Klin Co.* v. *New York R. T. Corp.,* 271 N. Y. 376, 380), it explicitly recognized in that same case that the " differences between corporeal hereditaments and easements prevent full application of the same rule in both cases " (271 N. Y., p. 379). Thus, where both doctrines are susceptible of similar treatment — such as the designation of the period of time within which the right to land by adverse possession and the right to an easement by prescription ripens (see *Klin Co.* v. *New York R. T. Corp., supra,* 271 N. Y. 376) — an analogy exists and the statutory rules are to be applied to easements. (See, also, *Van Roo* v. *Van Roo,* 294 N. Y. 731, affg. 268 App. Div. 170, 175.) Where, however, as here, we are concerned with the kind of physical conduct prerequisite to gaining an easement by prescription, the conduct specified in the statute as essential for acquiring land by adverse possession affords no analogy. The statute — section 40 — deals with the

acquisition of " title " to " land "; its key words are " possession " and " possessed and occupied ", concepts necessarily related to ownership of an estate in land. (See 2 Powell on Real Property [1950], § 172, p. 7.) One does not, however, possess or occupy an easement or any other incorporeal right. An easement derives from use, and its owner gains merely " a limited use or enjoyment of the servient land." (3 Powell, *op. cit.,* § 405, pp. 386–387; see, also, 5 Restatement, Property, § 457, comment *a*; 1 Thompson on Real Property [Perm. ed., 1939], § 315.) And, by the same token, when section 40 requires that, for the purpose of constituting an " adverse possession ", the " land " must be " protected by a substantial inclosure " or " usually cultivated or improved ", the statute must be deemed to refer only to estates in land and, of necessity, calls for proof of one or another of the specified incidents in order to prove *possession* and *occupancy,* not a privilege or right of user. In other words, as " the enjoyment of easements lies in use rather than in possession ", the only physical conduct necessary for their acquisition by prescription is " making use " of a portion of another's land (5 Restatement, *id.*), and one claiming a right of way by prescription is not required to prove that the way was enclosed, cultivated or improved. In short, the prescribed statutory manifestations of adverse possession — as one court wrote about section 372 of the Code of Civil Procedure, the predecessor of section 40 — can have " no application to the case of an easement as of passage." ' (*Colburn* v. *Marsh,* 68 Hun 269, 272.)

Any possible doubt as to the correctness of this construction is dissipated by a consideration of the statute's history. Its earliest forerunner, word for word identical with section 40, is contained in the Laws of 1849 (ch. 438, § 85). Before that time, under the common law, acquisition of title to land by adverse possession required enclosure, cultivation or improvement, but not so the acquisition of an easement by prescription. (See 2 Hilliard, Real Property [1839], pp. 53–55.) The 1849 enactment simply represented a codification of the rules prevailing at common law (see 1 Hilliard, *op. cit.,* p. 27, and cases there collected); no change of settled principles was then intended, and nothing that has been done since suggests a design on the

part of the legislature to modify those principles. In 1849, as today, neither enclosure, cultivation nor improvement was essential to spell out an easement by prescription.

However, not every use of another's land gives rise to an easement. It is also requisite that the use be adverse, open and notorious, continuous and uninterrupted for the prescriptive period. (See *Wiseman* v. *Lucksinger,* 84 N. Y. 31; *Hammond* v. *Zehner,* 21 N. Y. 118; see, also, 5 Restatement, *id.*)[1] In the case before us, there is no question as to the sufficiency of the evidence to support the affirmed findings that plaintiff and his predecessor openly and notoriously, continuously and uninterruptedly used the right of way, even up to the year 1931, for far more than twenty years, the period necessary — under the law as it then stood (Civ. Prac. Act, § 34, prior to amendment by L. 1932, ch. 264, reducing the period to fifteen years) — to spell out a prescriptive right. The proof is also more than sufficient, not only from the circumstances surrounding the inception and continuance of the use of the right of way, but also from the fact that plaintiff alone maintained it and kept it in repair, to support the further finding that the use was adverse under a claim of right. Beyond that, this court has consistently held, " Under ordinary circumstances, an open, notorious, uninterrupted and undisputed use of a right of way is presumed to be adverse under claim of right and casts the burden upon the owner of the servient tenement to show that the user was by license " (*Pirman* v. *Confer,* 273 N. Y. 357, 363; see, also, *Nicholls* v. *Wentworth,* 100 N. Y. 455; *Ward* v. *Warren,* 82 N. Y. 265; *Hammond* v. *Zehner, supra,* 21 N. Y. 118). That presumption was, of course, available to plaintiff Di Leo, and it was not rebutted by the showing of an occasional use by some of the defendants or their predecessors (cf. *Anthony* v. *Kennard Bldg. Co.,* 188 Mo. 704; Note, 170 A. L. R. 776, 825) — particularly where it was plaintiff who alone conceived the right of way, established it, maintained it and repaired it. (Cf. *Pirman* v. *Confer, supra,* 273 N. Y. 357, 363; 4 Tiffany, Real Property [3d ed., 1939], p. 565, fn. 7.)

---

1. As is perhaps manifest, use of an easement such as a right of way, if open and continuous, provides the same assurance of notoriety and utilization as would enclosure, cultivation or improvement in the case of land itself.

Plaintiff's easement having been established by prescription — the phrase is the trial court's — "before 1931", we come to the question whether plaintiff had divested himself of his right to that easement by an agreement made in 1932. The courts below found that he had not, and in that conclusion we concur. The only subject treated in that agreement was the fixation of boundary lines, and the method chosen by the draftsmen to achieve that goal is manifest. After describing the then existing boundaries, the parties denoted the lines that they desired to establish. Then, to effectuate their purpose, each party, it was recited, "remises, releases and quitclaims" to his neighbor all his "right, title and interest in and to the land lying" — as the case might be — to the north or south "of said Boundary Line so established".

It is almost self-evident that the parties had but one object in mind, the establishment of boundary lines between their respective parcels. There was neither mention of the right of way nor manifestation of an intent that plaintiff release or divest himself of his easement or any other interest. Indeed, the parties themselves noted in the instrument that "a question has arisen as to the location of the true Boundary Line", and then went on to recite that they "desire to fix and definitely establish the Boundary Line". Where "it appears that the purpose of the parties was solely directed towards the particular matter * * * general words will be restrained." (3 Williston on Contracts [Rev. ed., 1936], p. 1784.) Consequently, the words quoted above from the agreement, general though they may be, must be limited to their intended scope, taken to refer only to the boundary lines of the parties and to have no effect on plaintiff's right of way. As the Supreme Court of Wisconsin declared in a case not unlike the present, "These quitclaim deeds constituted mere disavowals by the parties that they made any claim to real estate on the other side of the dividing [boundary] line, for the sole and only purpose of finally and permanently fixing the dividing line. The quitclaims were incidental to the establishment of the line, and when they accomplished this purpose they had no other or further object to serve." (*Ogden* v. *Straus Bldg. Corp.*, 187 Wis. 232, 255.)

As a matter of fact, plaintiff continued to use the right of way until at least 1946, fourteen years after the making of the agreement, without objection or interference from the parties to it, and such conduct, constituting as it does a practical construction of sorts (see, e.g., *Brooklyn Public Lib.* v. *City of New York,* 250 N. Y. 495, 501), goes far toward establishing that neither plaintiff nor anyone else regarded the agreement as a release or a divestiture of his easement. Moreover, in 1946, when Port Chester Lumber, a party to the 1932 agreement, conveyed its land to Pecksto, it made that conveyance " SUBJECT TO * * * Possible rights of others to pass and re-pass over the said premises from land adjoining the above described premises to the South ", that is, from plaintiff's property. Here, too, is recognition that plaintiff had not divested himself of his easement by the 1932 agreement or anything contained in it.

Although defendant White Plains had previously owned the property now held by Waef, it concededly has no interest in that property at the present time; indeed — we were told upon argument of the appeal — White Plains had gone out of existence even before this action was commenced. Since it also appears that it had not in any way interfered with plaintiff's use of his easement, the judgment against it may not stand.

That leaves for consideration the judgment rendered against those defendants who are the mortgagees of the parcel belonging to Waef. As owners of an interest in the alleged servient estate, they were properly made parties to the action; the value of their security would necessarily be affected by the outcome of the litigation. (See, e.g., *Carter* v. *Sullivan,* 281 Mass. 217, 227–228.) Whether there is basis for the judgment against them in its present form, however, poses another question. It not only restrains them from interfering in the future with plaintiff's ingress and egress over the right of way, but it directs them to remove any obstruction now encroaching upon it. Since there is no proof that any one of the mortgagees took part in setting up or maintaining the obstruction complained of, the judgment, insofar as it orders them to remove it, is unwarranted. (Cf. *Gulick* v. *Hamilton,* 287 Ill. 367; *McNeil* v. *Kennedy,* 88 W. Va. 524.)

The judgment should be modified (1) by reversing so much thereof as grants relief against defendant White Plains Terminal Corp. and directing that the complaint against it be dismissed, without costs to said defendant, and (2) by striking therefrom so much as directs defendants-mortgagees, lda C. Butterworth, Arthur F. Riegel, Edward R. Riegel, Walter J. Riegel and Frank E. Donahue, to remove obstructions, without costs to said defendants; and, except as so modified, the judgment should be affirmed, with costs to plaintiff in this court against all defendants except White Plains Terminal Corp., Butterworth, Donahue and the defendants Riegel.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROES-SEL, JJ., concur.

Judgment accordingly.