Rote v Gibbs (2021 NY Slip Op 03938)





Rote v Gibbs


2021 NY Slip Op 03938


Decided on June 17, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 17, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


154 CA 20-00700

[*1]GAIL M. ROTE AND GREGORY J. MALEY, PLAINTIFFS-APPELLANTS,
v
JOHN A. GIBBS, DEFENDANT-RESPONDENT. 






BENNETT, DIFILIPPO & KURTZHALTS, LLP, EAST AURORA (MAURA C. SEIBOLD OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
GERALD J. VELLA, SPRINGVILLE, FOR DEFENDANT-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Cattaraugus County (Jeremiah J. Moriarty, III, J.), entered December 23, 2019. The judgment dismissed the complaint. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law without costs, the complaint is reinstated and judgment is granted in favor of plaintiffs as follows:
It is ORDERED, ADJUDGED and DECLARED that plaintiffs are the lawful owners of the disputed parcel as depicted in the Survey of 10151 Point Peter Road by Nussbaumer & Clarke, Inc. dated October 1, 2015.
Memorandum: Plaintiffs commenced this action pursuant to RPAPL article 15 seeking a determination that they are the lawful owners of specified real property based on their adverse possession of that property. Following a nonjury trial, Supreme Court concluded that plaintiffs failed to establish that they acquired title to the subject property by adverse possession and issued a judgment dismissing the complaint. We agree with plaintiffs that the court erred and that they are the lawful owners of the subject property.
In 1948, Frank and Elvina Rote purchased property in the Town of Persia, Cattaraugus County (Rote property). One or both of them owned it until 2012, when the last one of them died. Plaintiff Gail M. Rote was their eldest child, and she and her husband, plaintiff Gregory J. Maley, purchased the property from Frank Rote's estate in 2014. The Rote property undisputably consists of all of the titled property to the south of Point Peter Road. North of that road is an area of land, consisting of steep ravines and wilderness, which is bounded on the north by Cattaraugus Creek (disputed parcel).
The Rotes and Maley (collectively, Rote family) have at all relevant times believed that they owned the disputed parcel, and that belief was buttressed by the fact that tax maps listed them as the owners of that property and the fact that they paid taxes on that property from 1948 until 2015. The creek is the boundary line between the Town of Persia, Cattaraugus County and the Town of Collins, Erie County.
In 2011, defendant purchased property to the north of the creek in the Town of Collins from Edward Lillie, who had purchased that property from his father's estate. Despite the fact that the Town of Persia tax maps listed the Rote family as the owners of the disputed parcel, the deeds in defendant's chain of title established that he was the deeded owner of that land. Once defendant showed his deed to Town of Persia employees in 2015, they corrected the tax maps, prompting plaintiffs to commence this action.
At trial, plaintiffs presented evidence that the Rote family and their friends continuously used the disputed parcel ever since the family purchased the Rote property in 1948. Although friends of the Rote family knew that they had permission to use the disputed parcel, they nevertheless repeatedly sought permission from members of the Rote family to use the disputed parcel for, inter alia, dumping, trapping, hunting and fishing. The Town of Persia likewise sought permission from the Rote family to dump debris and snow onto the disputed parcel, and an oil company obtained an easement from the Rote family over the disputed parcel for the purpose of installing pipes. The Department of Environmental Conservation (DEC) also sought an easement over the disputed parcel from the Rote family, but the family denied that request.
Throughout the time that the Rote family owned their property, their septic and water systems drained onto the disputed parcel and, at one point, they had a portion of the disputed parcel excavated with a backhoe to clear their septic line. The Lillie family, owners of defendant's property from 1941 until 2011, never disputed the Rote family's ownership of the disputed parcel, and the Lillie family did not assert any claim of ownership in that land during the 70 years they held title to the disputed parcel.
At trial, witnesses for plaintiffs and defendant conceded that, despite many people asking the Rote family for permission to use the disputed parcel, "[a] lot of people," including people from outside the area, used the creek for kayaking, tubing and fishing. According to defendant, "[h]alf of Gowanda" used the creek or disputed parcel in the summers without asking for permission from anyone. Following the trial, the court found in favor of defendant and dismissed the complaint.
As a preliminary matter, no one disputes that the pre-2008 version of the RPAPL applies inasmuch as plaintiffs' claim, as alleged in the complaint and the supporting documentation submitted by plaintiffs, would have vested before 2008 (see Yee v Panousopoulos, 176 AD3d 1142, 1144 [2d Dept 2019]; Franza v Olin, 73 AD3d 44, 47 [4th Dept 2010]). "To establish a claim of adverse possession under the pre-2008 version of the RPAPL, a plaintiff is required to show that possession of the disputed property was: '(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period' " (Slacer v Kearney, 151 AD3d 1602, 1603-1604 [4th Dept 2017], lv denied 30 NY3d 909 [2018], quoting Walling v Przybylo, 7 NY3d 228, 232 [2006]; see Corigliano v Sunick, 56 AD3d 1121, 1121 [4th Dept 2008]).
Where a party's claim of right to property is not founded upon a written instrument, "the party asserting title by adverse possession must establish that the land was 'usually cultivated or improved' or 'protected by a substantial inclosure' " (Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012], quoting RPAPL former 522). Inasmuch as the law disfavors the acquisition of title by adverse possession, the elements thereof "must be proven by clear and convincing evidence" (id.; see Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 159 [1996]).
On review of a determination following a bench trial, "we independently review the weight of the evidence and may grant the judgment warranted by the record, while according due deference to the trial judge's factual findings particularly where . . . they rest largely upon credibility assessments" (Eddyville Corp. v Relyea, 35 AD3d 1063, 1064 [3d Dept 2006] [internal quotation marks omitted]; see Shawangunk Conservancy v Fink, 305 AD2d 902, 903-904 [3d Dept 2003]; see also Dryden Mut. Ins. Co. v Goessl, 117 AD3d 1512, 1513 [4th Dept 2014], affd 27 NY3d 1050 [2016]).
Here, the facts are generally not in dispute, and the issue presented is whether those facts establish by clear and convincing evidence the requisite elements of adverse possession. On our independent review of the evidence (see Smiley v State of New York [appeal No. 2], 188 AD3d 1661, 1662 [4th Dept 2020]), we agree with plaintiffs that they established each element by the requisite degree of proof.
"A party claiming title by adverse possession 'is not required to show enmity or specific acts of hostility in order to establish the element of hostility' . . . Th[at] element is satisfied where an individual asserts a right to the property that is 'adverse to the title owner and also in opposition to the rights of the true owner' " (Estate of Becker, 19 NY3d at 81). "The element of hostility may be established by a distinct assertion of a right hostile to the owner," and "hostility [*2]may be presumed if all of the other elements of adverse possession have been established" (Dekdebrun v Kane, 82 AD3d 1644, 1646 [4th Dept 2011] [internal quotation marks omitted]).
In our view, plaintiffs established that element by clear and convincing evidence inasmuch as there was no "indication that [the Rote family's] possession was with the consent or permission of defendant[]" or the Lillies (Tubolino v Drake, 178 AD2d 951, 952 [4th Dept 1991]). Additionally, the Rote family asserted rights in the disputed parcel adverse to the title owner by paying taxes on that property, granting others permission to use that property, granting an oil company an easement over the disputed parcel, denying permission for the DEC to allow public fishing on that property, draining their septic and water onto that property and excavating areas of that property to clear the septic line (see id.).
With respect to the element of actual possession, "[t]he issue is 'actual occupation,' not subjective knowledge" of ownership (Walling, 7 NY3d at 233). In other words, "[c]onduct will prevail over knowledge, particularly [where, as here,] the true owners have acquiesced in the exercise of ownership rights by the adverse possessors" (id. at 232-233; see Children's Magical Garden, Inc. v Norfolk St. Dev., LLC, 164 AD3d 73, 84 [1st Dept 2018]). Based on the Rote family's acts of dominion and control and the 70-year acquiescence of the Lillies, i.e., the prior title owners of defendant's property, and the Rote family's exercise of ownership, we conclude that plaintiffs established the element of actual possession.
"The element of 'open and notorious' requires that the possession be sufficiently visible such that a casual inspection by the owner of the property would reveal the adverse possessor's occupation and use thereof" (Weinstein Enters., Inc. v Pesso, 231 AD2d 516, 517 [2d Dept 1996]). Here, the evidence at trial demonstrated that everyone in the community, including state and local government agencies and defendant's predecessor in title, believed that the Rote family were the owners of the disputed parcel, and many recognized a need to obtain their permission to use the property. Even a casual inspection of the disputed parcel would have revealed that the Rote family were draining their water and sewage onto that property and dumping their yard debris and snow on that property. In our view, such evidence satisfies the "open and notorious" element.
"To establish the 'exclusivity' element, the adverse possessor must alone care for or improve the disputed property as if it were his/her own . . . The focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property. Thus, allowing others to use the property does not necessarily negate 'exclusivity.' When the party claiming adverse possession permits others to use the property, exclusivity exists where the claimant's use of the property is 'separate and exclusive from the general use' " (Estate of Becker, 19 NY3d at 83; see Air Stream Corp. v 3300 Lawson Corp., 99 AD3d 822, 825-826 [2d Dept 2012], lv denied 21 NY3d 852 [2013]).
Plaintiffs established by clear and convincing evidence that their use of the disputed parcel was separate and exclusive from the general use. At the outset, we note that we must distinguish between use of the creek, and use of the land within the disputed parcel. Most of the testimony at trial centered on the seasonal use of the creek, with some occasional use of the disputed parcel by fishers and a few other people who used the property to access the creek.
The seasonal use of the disputed parcel by some members of the public does not change the fact that the Rote family's use of that property was " 'separate and exclusive from the general use' " (Estate of Becker, 19 NY3d at 83). For example, only the Rote family used the disputed parcel for sewage and drainage, and only the Rote family excavated sections of that property to repair drainage pipes. Only the Rote family granted or denied permission to government officials or private companies who asked to use the disputed parcel for the dumping of debris or for recreational use.
"[T]he requirement of continuous possession is satisfied when the adverse claimant's acts of possessing the property, including periods during which the claimant exercises dominion and control over the premises or is physically present on the land . . . , are consistent with acts of possession that ordinary owners of like properties would undertake . . . In other words, '[t]he character of disputed property is crucial in determining what degree of control and what character of possession is required to establish adverse possession' " (Ray, 88 NY2d at 159-160).
Inasmuch as the disputed parcel consists of " 'wild and undeveloped land that is not readily susceptible to habitation, cultivation or improvement,' " plaintiffs were not required to establish the same " 'quality of possession as residential or arable land, since the usual acts of ownership are impossible or unreasonable' " (id. at 160). Plaintiffs established that the use of the disputed parcel by the Rote family was consistent with acts of possession that ordinary owners of such property would have undertaken, and no one disputes that plaintiffs can tack onto the period of possession of Gail Rote's parents to meet the 10-year requirement of continuity (see Brocco v Mileo, 144 AD2d 200, 201 [3d Dept 1988]; see generally Belotti v Bickhardt, 228 NY 296, 302-304 [1920]).
Even assuming, arguendo, that plaintiffs' claim to the disputed parcel is not based on a written instrument such as the Town of Persia's tax maps, we conclude that plaintiffs also established that, although the disputed parcel was not " 'protected by a substantial inclosure,' " it was " 'usually cultivated or improved' " (Estate of Becker, 19 NY3d at 81, quoting RPAPL former 522). "The requisite character of the acts of improvement sufficient to supply the record owner with notice of an adverse claim will vary with 'the nature and situation of the property and the uses to which it can be applied' . . . and must 'consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners' " (Ray, 88 NY2d at 160; see West v Hogan, 88 AD3d 1247, 1248 [4th Dept 2011], affd 19 NY3d 1073 [2012]). Plaintiffs established that the use of the disputed parcel by the Rote family was the usual use of that wild and undeveloped land, which included steep ravines. Indeed, defendant did not cultivate or improve the property in any way after he asserted title to it, establishing that the Rote family's use was the same as owners of similar lands.
We thus conclude that plaintiffs established each and every element of adverse possession by clear and convincing evidence and we therefore reverse the judgment, reinstate the complaint and award judgment in favor of plaintiffs.
Entered: June 17, 2021
Mark W. Bennett
Clerk of the Court