Genesee County Fish & Game Protective Assn., Inc. v Sullivan (2025 NY Slip Op 03407)

Genesee County Fish & Game Protective Assn., Inc. v Sullivan

2025 NY Slip Op 03407

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., SMITH, GREENWOOD, DELCONTE, AND HANNAH, JJ.

133 CA 24-00587

[*1]THE GENESEE COUNTY FISH AND GAME PROTECTIVE ASSOCIATION, INC., PLAINTIFF-RESPONDENT,
v
CAPRI SULLIVAN, ALSO KNOWN AS CAPRI DIX, WILLIAM DIX, DEFENDANTS-APPELLANTS, AND KAREN VANDENBURG, DEFENDANT. 

LACY KATZEN LLP, ROCHESTER (JOHN M. WELLS OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
JOHN F. WHITING, LEROY, FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Genesee County (Diane Y. Devlin, J.), entered March 18, 2024. The order, inter alia, granted the motion of plaintiff insofar as it sought summary judgment on the first and third causes of action. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: Plaintiff, The Genesee County Fish and Game Protective Association, Inc., commenced this action seeking, inter alia, a determination that it is the fee title owner of disputed land. Defendants-appellants, Capri Sullivan, also known as Capri Dix (Capri), and William Dix (William) (collectively, defendants), appeal from an order that, among other things, granted plaintiff's motion insofar as it sought summary judgment on its first and third causes of action, seeking relief based on adverse possession, and denied defendants' cross-motion for summary judgment on their first counterclaim, seeking to quiet title, and dismissing the complaint. We affirm.
Plaintiff is a private conservation club that was incorporated in 1909 as a not-for-profit corporation. In addition to its conservation efforts, plaintiff provides its members with recreational opportunities, such as hiking, fishing, camping, and swimming, on its property, which encompasses approximately 200 acres of land and includes a body of water known as Godfrey's Pond. Plaintiff has about 1,550 members, 21 of whom maintain primary, year-round residences on the property. Plaintiff took title to its property by warranty deed in 1932 and, at least as early as that time, a private road existed leading to Godfrey's Pond. The road, known as Godfrey's Pond Road, has been used and maintained by plaintiff and its members since plaintiff took title to the property. Indeed, Godfrey's Pond Road is the sole roadway leading from the public road, i.e., Griswold Road, to plaintiff's property, and thus the private road provides the only access to the property for plaintiff's members, emergency service vehicles, and delivery services.
Defendants, a married couple, reside across Griswold Road just to the east of its intersection with Godfrey's Pond Road. In December 2015, Capri was granted a remainder interest from her grandmother, defendant Karen VanDenburg (grandmother), in an additional 45-acre parcel that is located south of Griswold Road and abuts the east side of plaintiff's property. Critically, according to the deeds, tax map, and surveys, the boundary line between Capri's parcel and plaintiff's property runs along the center of Godfrey's Pond Road, and therefore the eastern side of the road, i.e., the right-hand lane proceeding north, appears on Capri's side of the boundary line.
For reasons that remain somewhat vague but appear to stem from defendants' perception that some of plaintiff's members and their guests were improperly coming onto defendants' land, a dispute arose between defendants and plaintiff regarding the use and ownership of Godfrey's Pond Road. After further developments and several provocative actions primarily taken by defendants and members of their family, including blocking the eastern half of the road with tree trunks, plaintiff commenced the present action asserting, as relevant on appeal, causes of action for adverse possession and to quiet title by way of a judicial determination that plaintiff is the rightful and legal owner of the entire road. Defendants answered and, among other things, interposed a counterclaim to quiet title to the eastern half of the road (first counterclaim). Following discovery, plaintiff moved for, among other things, summary judgment on its adverse possession and quiet title causes of action. Defendants opposed the motion and cross-moved for, inter alia, summary judgment on their first counterclaim and dismissing the complaint.
Supreme Court issued a written decision in which it concluded that plaintiff met its initial burden on the motion of establishing the elements of adverse possession, as well as an applicable statutory requirement. The court determined that plaintiff had possessed the entirety of Godfrey's Pond Road for decades through its daily use and regular maintenance of the road. Furthermore, reasoning that there was no direct or documentary evidence that defendants or their predecessors in interest had granted permission to plaintiff to use the eastern half of the road, the court rejected defendants' contention that plaintiff had permission to occupy the disputed property. The court determined that defendants failed to raise a triable issue of fact.
As a preliminary matter, we note that the 2008 amendments to RPAPL article 5 do not apply here because, according to the allegations in the complaint and the supporting documentation submitted by plaintiff, title to the disputed property would have vested in plaintiff before 2008 (see Rote v Gibbs, 195 AD3d 1521, 1523 [4th Dept 2021], appeal dismissed 37 NY3d 1106 [2021]; Perry v Edwards, 79 AD3d 1629, 1631 [4th Dept 2010]; Franza v Olin, 73 AD3d 44, 47 [4th Dept 2010]). The court thus properly applied the pre-amendment statutory requirements and, to the extent that the parties advocate that we apply post-amendment statutory definitions on appeal, we further note that "this Court is not bound by an erroneous concession of counsel or the parties with respect to a legal principle and such 'concession does not . . . relieve us from the performance of our judicial function and does not require us to adopt the proposal urged upon us' " (Matter of Knavel v West Seneca Cent. Sch. Dist., 149 AD3d 1614, 1616 [4th Dept 2017 plurality], quoting People v Berrios, 28 NY2d 361, 366-367 [1971]; see Bartel v Maersk Line, Ltd., 215 AD3d 533, 543-544 [1st Dept 2023]; see generally Kamen v Kemper Fin. Servs., Inc., 500 US 90, 99 [1991]).
"Adverse possession, although not a favored method of procuring title, is a recognized one. It is a necessary means of clearing disputed titles and the courts adopt it and enforce it, because, when adverse possession is carefully and fully proven, it is a means of settling disputed titles and this is desirable" (Belotti v Bickhardt, 228 NY 296, 308 [1920]; see Walling v Przybylo, 7 NY3d 228, 233 [2006]). "Where there has been an actual continued occupation of premises under a claim of title, exclusive of any other right, but not founded upon a written instrument or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely" (RPAPL former 521; see Estate of Becker v Murtagh, 19 NY3d 75, 80-81 [2012]). "To establish a claim of adverse possession under the pre-2008 version of the RPAPL, a plaintiff is required to show that possession of the disputed property was: '(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period' " (Slacer v Kearney, 151 AD3d 1602, 1603-1604 [4th Dept 2017], lv denied 30 NY3d 909 [2018], quoting Walling, 7 NY3d at 232). "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period" (Brand v Prince, 35 NY2d 634, 636 [1974]; see Becker, 19 NY3d at 81). "Because the acquisition of title by adverse possession is not favored under the law, the[ ] elements must be proven by clear and convincing evidence" (Becker, 19 NY3d at 81).
Here, we conclude for the following reasons that, contrary to defendants' contention and the dissent's conclusion, the court properly granted plaintiff's motion insofar as it sought summary judgment on the first and third causes of action for a determination that it is the fee title owner of the disputed land based on adverse possession (see id. at 77-84; Slacer, 151 AD3d at 1602-1605; Reardon v Broadwell, 121 AD3d 1546, 1546-1547 [4th Dept 2014]).
Defendants do not dispute on appeal that plaintiff met its burden of establishing by clear and convincing evidence that its use and occupation of the entirety of Godfrey's Pond Road was actual, open and notorious, and continuous for the required period.
Indeed, the record demonstrates that plaintiff has engaged in "acts of dominion and control over the premises that are indicative of . . . actual possession" of the whole road (Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 161 [1996]; see Rote, 195 AD3d at 1524-1525). Plaintiff's submissions establish that, for the better part of a century, plaintiff has paved, widened, patched, repaired, plowed, and otherwise maintained the road on its own or at its expense or by arrangement with third parties. Plaintiff placed a sign at the entrance of the road indicating that plaintiff's property is private, and that sign had been in place for at least 20 years. Additionally, consistent with the affidavits submitted by two of plaintiff's members, Capri herself acknowledged that plaintiff had installed a speed sign on the east side of the road and that the speed sign had been present for decades.
Plaintiff also "satisfied the statutory requirements specifying those acts necessary to establish the common-law requirement of actual possession by demonstrating that the property had been 'usually cultivated or improved' " (Franzen v Cassarino, 159 AD2d 950, 951 [4th Dept 1990], quoting RPAPL former 522 [1]). "The requisite character of the acts of improvement sufficient to supply the record owner with notice of an adverse claim will vary with 'the nature and situation of the property and the uses to which it can be applied' . . . and must 'consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners' " (Ray, 88 NY2d at 160). Here, not only did plaintiff pave and maintain the entirety of the road, it is undisputed that plaintiff also maintained the area to the east of the road by mowing the grass and trimming the trees and brush to prevent limbs from hanging over that side of the road (see West Middlebury Baptist Church v Koester, 50 AD3d 1494, 1495 [4th Dept 2008]; Golden Hammer Auto Body Corp. v Consolidated Rail Corp., 151 AD2d 545, 546 [2d Dept 1989]).
Plaintiff satisfied the open and notorious element inasmuch as the aforementioned acts were "sufficiently visible such that a casual inspection by the owner of the property would reveal the adverse possessor's occupation and use thereof" (Rote, 195 AD3d at 1525 [internal quotation marks omitted]). Plaintiff likewise satisfied the continuous possession element inasmuch as its exercise of dominion and control over the entirety of the road during the requisite period was consistent with acts of possession that ordinary owners of like properties would undertake (see Ray, 88 NY2d at 159-160).
Consequently, by showing that it paved, repaired, plowed, and maintained the whole roadway for decades and also maintained a strip of land adjacent thereto to ensure clear travel along the road, plaintiff indisputably established by clear and convincing evidence that it had actual possession of the entirety of Godfrey's Pond Road in a manner that was open and notorious and continuous for well over the requisite period (see Spiegel v Ferraro, 73 NY2d 622, 627-628 [1989]; Estate of Clanton v City of New York, 153 AD3d 787, 788-789 [2d Dept 2017]; Kappes v Ruscio, 170 AD2d 743, 743-744 [3d Dept 1991]).
Defendants nonetheless contend, and the dissent agrees, that plaintiff failed to establish by clear and convincing evidence that its possession was exclusive. We reject that contention. "To establish the 'exclusivity' element, the adverse possessor must alone care for or improve the disputed property as if it were [their] own" (Becker, 19 NY3d at 83). "The focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property. Thus, allowing others to use the property does not necessarily negate 'exclusivity.' When the party claiming adverse possession permits others to use the property, exclusivity exists where the claimant's use of the property is 'separate and exclusive from the general use' " (id.). "Indeed, exclusivity is not defeated even if the true owner makes occasional forays onto the property" (1 Warren's Weed New York Real Property § 5.33 [Apr. 2025]; see e.g. Becker, 19 NY3d at 83-84; Robinson v Robinson, 34 AD3d 975, 977 [3d Dept 2006], lv denied 8 NY3d 805 [2007]).
Here, the evidence plaintiff submitted in support of its motion established that plaintiff "alone care[d] for or improve[d] the disputed property as if it were [plaintiff's] own" (Becker, 19 NY3d at 83). Plaintiff's submissions showed that it was only plaintiff that had plowed, patched, [*2]paved, repaired, and otherwise maintained the entire road for decades, and even the assistance of governmental entities or private contractors was permitted or paid for by plaintiff (see Rote, 195 AD3d at 1525-1526). Capri herself acknowledged in her deposition, which was submitted by plaintiff, that she was unaware of any instances in which her predecessors in interest had maintained, paved, plowed, patched, or repaired the road, and that she had no documentation showing any such work. Plaintiff's submissions also established that its possession and use of Godfrey's Pond Road was to the exclusion of the general public (see Becker, 19 NY3d at 83). Plaintiff placed a private property sign at the entrance of the road and kept the sign there for at least 20 years; relatedly, one of plaintiff's members averred that, if any unusual individuals entered plaintiff's property, those people were asked to provide proof of membership and were asked to leave if they lacked membership (see 1 Warren's Weed New York Real Property § 5.33 [Apr. 2025]; see also Children's Magical Garden, Inc. v Norfolk St. Dev., LLC, 164 AD3d 73, 83 [1st Dept 2018]).
We conclude on this record that defendants' occasional and brief use of all-terrain vehicles (ATVs) on the northern part of Godfrey's Pond Road and their other recreational forays—references to which appear in both plaintiff's moving papers and defendants' opposition papers—are insufficient to raise a triable issue of fact with respect to the exclusivity element. Initially, to the extent that the use of ATVs along the road to enter or exit the 45-acre parcel represents activity engaged in by defendants in the period since Capri obtained an interest in that parcel in December 2015, we note that "evidence relating to defendant[s'] alleged use of the property and other events that occurred after the expiration of the statutory period is not relevant" (Robinson, 34 AD3d at 977). Regardless, defendants' brief operation of recreational vehicles on a portion of the road that was designed and paved by plaintiff for standard vehicular traffic—occurrences that William described as few and far between—"constitutes nothing more than occasional recreational use that does not defeat a showing of exclusivity" (Bergmann v Spallane, 129 AD3d 1193, 1196 [3d Dept 2015]; see Becker, 19 NY3d at 83; Robinson, 34 AD3d at 977).
Oral reports that Capri's great-grandfather, i.e., a predecessor in interest, may have provided free gravel to plaintiff—references to which again appear in both plaintiff's moving papers and defendants' opposition papers—do not raise a material issue of fact regarding the exclusivity element under the circumstances of this case. Plaintiff's safety officer recounted in his deposition a conversation during which reference was made to the great-grandfather having provided gravel for Godfrey's Pond Road, and one of plaintiff's members clarified during his deposition testimony that the great-grandfather "at least twice" gave plaintiff gravel to "buil[d] up the shoulder" of the road, which occurred in the 1950s. Defendants submitted the deposition of a longtime resident on plaintiff's property who had previously served on the executive board, and he testified at one point that the great-grandfather allowed plaintiff to use gravel from his property, free-of-charge, for "patching [the road] here and there." As is evident from the testimony, the only time period provided by any of the witnesses for the great-grandfather's purported provision of gravel for plaintiff's maintenance activities on Godfrey's Pond Road was during the 1950s. Those contributions by the great-grandfather would thus be insufficient to interrupt plaintiff's exclusive maintenance of the road in the subsequent decades through at least 2008 (see Robinson, 34 AD3d at 977; Boeheim v Vanarnum, 207 AD2d 582, 583 [3d Dept 1994]). Even if the great-grandfather had provided free gravel for repair of the road "here and there" over a longer period of time, we conclude that such occasional contributions to the maintenance of the road are insufficient to raise an issue of fact with respect to the exclusivity of plaintiff's possession, particularly considering that only plaintiff had plowed, patched, paved, repaired, and otherwise maintained the entire road for decades and, in doing so, permitted or paid for assistance by a governmental entity or private contractor (see generally Bergmann, 129 AD3d at 1196). Stated differently, the great-grandfather's minor contribution to maintenance materials "was different in scope than [plaintiff's re]construction, maintenance and control of the [road]" over the course of several decades (Becker, 19 NY3d at 83).
Defendants further contend, and the dissent again agrees, that plaintiff failed to establish the hostility element. We reject that contention. "A party claiming title by adverse possession 'is not required to show enmity or specific acts of hostility in order to establish the element of hostility' " (id. at 81). Instead, that element "is satisfied where an individual asserts a right to the property that is 'adverse to the title owner and also in opposition to the rights of the true owner' " (id., quoting Walling, 7 NY3d at 232; see Golobe v Mielnicki, — NY3d &mdash, &mdash, 2025 NY Slip Op [*3]01670, *3 [2025]). "A rebuttable presumption of hostility arises from possession accompanied by the usual acts of ownership, and this presumption continues until the possession is shown to be subservient to the title of another" (Becker, 19 NY3d at 81-82). Indeed, "hostility may be presumed" where, as here, "all of the other elements of adverse possession have been established" (Dekdebrun v Kane, 82 AD3d 1644, 1646 [4th Dept 2011]; see e.g. Becker, 19 NY3d at 81-82; Di Leo v Pecksto Holding Corp., 304 NY 505, 512 [1952]; Barnes v Light, 116 NY 34, 39-40 [1889]; Rote, 195 AD3d at 1524; Slacer, 151 AD3d at 1604; 1 Warren's Weed New York Real Property § 5.18 [Apr. 2025]). "However, hostility is negated by '[s]eeking permission for use from the record owner' " (Becker, 19 NY3d at 82). "Further, where there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession, the presumption of hostility may not apply" (id.). Instead, a " 'neighborly relationship . . . create[s] an implication that the use of the disputed [property] was permissive' " (id.). "When the entry upon land has been by permission or under some right or authority derived from the owner, adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner" (Hinkley v State of New York, 234 NY 309, 316 [1922]; see Meyers v Berl, 213 AD3d 1233, 1235 [4th Dept 2023]; Parklands E., LLC v Spangenberg, 174 AD3d 1374, 1376 [4th Dept 2019]). "Thus, in order to establish the hostility element, the party asserting the adverse possession claim must come forward with affirmative facts to establish that the use [of the property] was under a claim of right and adverse to the interests of [the true owners]" (Becker, 19 NY3d at 82 [internal quotation marks omitted]). Additionally, under pre-amendment common law regarding the claim of right, "an adverse possessor's actual knowledge of the true owner is not fatal to an adverse possession claim" (Walling, 7 NY3d at 233; see also Mau v Schusler, 124 AD3d 1292, 1296 [4th Dept 2015]). "The issue is 'actual occupation,' not subjective knowledge" of ownership (Walling, 7 NY3d at 233; see Rote, 195 AD3d at 1524).
Defendants assert that the record establishes that plaintiff's use of the eastern half of the road was with the express permission of the great-grandfather or that there is at least a triable issue of fact in that regard. We cannot agree.
First, plaintiff's submissions show that no such permission was expressly granted. Plaintiff's members who submitted affidavits each averred that plaintiff never received "permission" from defendants' predecessors in interest or anyone else to use, maintain, or possess the road (see Reardon, 121 AD3d at 1547). Plaintiff's safety officer similarly testified that no one had ever told him that the great-grandfather gave plaintiff permission to use the 45-acre parcel. For her part, Capri testified that her allegation that her predecessors in interest had given express permission for plaintiff to use the road was based solely on verbal stories about common usage of the road that she had heard from the great-grandfather and the grandmother. Capri acknowledged, however, that the great-grandfather "never gave any specific time frame" and did not generally use the word "permission" in describing plaintiff's use of the road. Defendants' reliance on Capri's testimony that the great-grandfather gave permission to members of plaintiff to enter the 45-acre parcel "[f]or specific reasons" is misplaced inasmuch as that testimony clearly refers to permission granted for discrete activities on the parcel then owned by the great-grandfather, not the ongoing and uninterrupted use of the entire road by plaintiff. Capri further testified that the grandmother never used the word "permission" or anything to that effect in describing plaintiff's use of the road. Capri had no written documentation to show an express grant of permission to plaintiff by her predecessors in interest. Capri likewise was never told by the great-grandfather or the grandmother that a member of plaintiff had sought permission to use, maintain, pave, plow, or repair Godfrey's Pond Road. Plaintiff therefore established that "[t]here was never any indication that [its] possession [of the entire road] was with defendants' predecessors' consent or permission" (Becker, 19 NY3d at 82; see Reardon, 121 AD3d at 1547).
Second, defendants' submissions failed to raise a triable issue of fact with respect to express permission. In deposition testimony submitted by defendants, one of plaintiff's members reiterated that he was not aware of any instance in which the great-grandfather gave plaintiff permission to use his land to access plaintiff's property on Godfrey's Pond Road. Indeed, that member explained that everyone, including the great-grandfather, had operated under the assumption that plaintiff owned the entire road because no one ever questioned that plaintiff had such ownership. The member testified that there was no dispute that plaintiff owned the entire [*4]road because it maintained, plowed, and repaired the road. Another member of plaintiff similarly testified that no one from plaintiff had ever told him that the great-grandfather gave plaintiff permission to use the eastern half of the road. During his deposition, the longtime resident testified that he did not know whether anyone gave plaintiff permission to use the land for the road, and the longtime resident confirmed that plaintiff plowed the road and mowed the grass on the eastern side thereof without express permission of the owners of the 45-acre parcel (see Reardon, 121 AD3d at 1547).
Plaintiff's recent property caretaker, who served in that role from January 2021 to September 2022, recounted an out-of-court statement made by his predecessor—who served in the 2010s and was recounting an out-of-court statement made to him by someone else about events that occurred decades earlier—that the great-grandfather and members of plaintiff had built the road together and shared a few beers while the road was being put in and that the great-grandfather had permitted plaintiff to have total access to use the road. We conclude that the recent property caretaker's "double hearsay account[ ] . . . [was] insufficient to raise a triable issue of fact" regarding express permission (Brown & Brown, Inc. v Johnson, 158 AD3d 1148, 1150 [4th Dept 2018]; see Hamilton v Picardo, 118 AD3d 1260, 1261 [4th Dept 2014], lv denied 24 NY3d 904 [2014]).
With respect to the historical permission ostensibly granted to plaintiff, William merely testified that he "assumed" that plaintiff had permission to build and use the road. "Such unsubstantiated assertions or speculations are, of course, insufficient to create a triable issue of fact" (Lynn G. v Hugo, 96 NY2d 306, 310 [2001]; see e.g. Smith v Costco Wholesale Corp., 50 AD3d 499, 501 [1st Dept 2008]). To the extent that William asserted that plaintiff, through the recent property caretaker, had sought permission to maintain or keep the roadway open, that testimony is likewise insufficient to raise a material issue of fact inasmuch as the recent property caretaker did not take on that role until January 2021, and thus any such request would have been made long after plaintiff had already established title to the road by adverse possession (see e.g. Robinson, 34 AD3d at 977; Boeheim, 207 AD2d at 583).
Defendants nonetheless assert that their submissions in opposition to the motion established as a matter of law, or at least raised an issue of fact, that the parties enjoyed a neighborly relationship of cooperation and accommodation, thereby giving rise to an inference of permissive use and negating the hostility element of an adverse possession claim. We reject that assertion.
While there is certainly some evidence of cordial historical relations between plaintiff and Capri's predecessors in interest, Capri herself testified that she and her predecessors in interest had been having issues or altercations with plaintiff for the last 60 years about its members and guests coming onto defendants' property. Moreover, even if the presumption of hostility is rendered inapplicable here by neighborly relations, we conclude that "the evidence submitted by the parties in support of their respective summary judgment motions firmly establishes that [plaintiff's] possession and use of the disputed property was under a claim of right and adverse to [the] interests" of Capri and her predecessors in interest (Becker, 19 NY3d at 82). In that regard, to the extent that defendants rely on the record evidence that there were no affirmative "acts of hostility" between the parties, that reliance is misplaced because "the element of 'hostility' need not be supported by proof of enmity or literally hostile acts" (Kappes, 170 AD2d at 744; see Golobe, — NY3d at &mdash, 2025 NY Slip Op 01670, *4; Becker, 19 NY3d at 81; Sinicropi v Town of Indian Lake, 148 AD2d 799, 800 [3d Dept 1989]). Rather, "[a]ll that is required is a showing that the possession actually infringes upon the [title] owner's rights" (Kappes, 170 AD2d at 744; see Becker, 19 NY3d at 81).
Here, the record establishes that, for the better part of a century, plaintiff had paved, widened, patched, repaired, plowed, and otherwise maintained the road, along with a strip of land along the eastern edge thereof, on its own or at its expense or by arrangement with third parties (see Becker, 19 NY3d at 82). Plaintiff treated the entirety of Godfrey's Pond Road as its own private property, to the exclusion of the general public (see id.). All of plaintiff's acts of improvement, occupation, maintenance, and use of the entirety of the roadway were hostile to the property interests of Capri and her predecessors in interest (see Spiegel, 73 NY2d at 627-628; Clanton, 153 AD3d at 788-789; Kappes, 170 AD2d at 743-744). Contrary to defendants' related assertion that the claim of right and hostility element is undermined by plaintiff's purported [*5]knowledge of the boundary line, we reiterate that, under pre-amendment common law regarding the claim of right, "an adverse possessor's actual knowledge of the true owner is not fatal to an adverse possession claim" (Walling, 7 NY3d at 233; see Mau, 124 AD3d at 1296). "The issue is 'actual occupation,' not subjective knowledge" of ownership (Walling, 7 NY3d at 233; see Rote, 195 AD3d at 1524).
In sum, " '[t]he ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period' " (Becker, 19 NY3d at 81, quoting Monnot v Murphy, 207 NY 240, 245 [1913]), and that is what occurred here. Capri's predecessors in interest engaged in decades-long acquiescence in plaintiff's possession, use, control, and maintenance of the entirety of Godfrey's Pond Road as plaintiff openly and increasingly took actions to privatize the road for exclusive use by its members to access plaintiff's property and the residences thereon. Similar to other cases in which paving and other related activities have established adverse possession, plaintiff here paved and re-paved the road, marked the entire road as private, placed a speed sign along the east side of the road, and generally maintained the whole road along with a strip of land on the eastern side thereof (see Spiegel, 73 NY2d at 627-628; Clanton, 153 AD3d at 788-789; Kappes, 170 AD2d at 743-744). We thus conclude on that basis that the court properly granted plaintiff's motion insofar as it sought summary judgment in its favor on its adverse possession and quiet title causes of action (see Becker, 19 NY3d at 77-84; Slacer, 151 AD3d at 1602-1605; Reardon, 121 AD3d at 1546-1547).
Finally, we do not address any provisions of the order that defendants may have agreed to and have not challenged on appeal in any event (see Misicki v Caradonna, 12 NY3d 511, 519 [2009]; Krause v Industry Matrix, LLC, 227 AD3d 1560, 1562 [4th Dept 2024]).
All concur except DelConte and Hannah, JJ., who dissent and vote to modify in accordance with the following memorandum: We respectfully dissent. We agree with the majority's reasoned recitation of the law as it relates to adverse possession under RPAPL former § 521, but we disagree with their ultimate conclusion that plaintiff established its entitlement to judgment as a matter of law in light of the motion record and the long-settled principles that "the acquisition of title to land by adverse possession is not favored under the law" (Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 159 [1996], citing Belotti v Bickhardt, 228 NY 296, 308 [1920]) and that "[i]ssue-finding, rather than issue-determination, is the key to the procedure" on a motion for summary judgment (Cooke v Corning Hosp., 198 AD3d 1382, 1383 [4th Dept 2021] [internal quotation marks omitted]; see Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957], rearg denied 3 NY2d 941 [1957]). Specifically, we conclude that the motion record—when "viewed in the light most favorable to the non-moving party" and with "every available inference . . . drawn in the [non-moving party's] favor," as it must be (Omar v Moore, 196 AD3d 1182, 1183 [4th Dept 2021] [internal quotation marks omitted]; see William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013])—presents triable issues of fact with respect to the elements of hostility and exclusivity. We would, therefore, modify the order by denying plaintiff's motion in its entirety.
With respect to the element of hostility, although the majority is correct that "hostility may be presumed if all of the other elements of adverse possession have been established, if it can be shown that the initial use was permissive, then adverse possession does not commence until such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner" (Dekdebrun v Kane, 82 AD3d 1644, 1646 [4th Dept 2011] [internal quotation marks omitted]; see also Di Leo v Pecksto Holding Corp., 304 NY 505, 512 [1952]). In other words, the element of "hostility is negated by '[s]eeking permission for use from the record owner' " (Estate of Becker v Murtagh, 19 NY3d 75, 82 [2012]). Thus, "where there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession, the presumption of hostility may not apply" inasmuch as " 'the neighborly relationship . . . create[s] an implication that the use of the disputed [property] was permissive' " (id.; see Hassinger v Kline, 91 AD2d 988, 989 [2d Dept 1983]).
In our view, the evidence in the motion record presents a triable issue of fact whether there was a close and cooperative relationship between plaintiff and the great-grandfather and predecessor in interest (great-grandfather) of defendant Capri Sullivan, also known as Capri Dix [*6](Capri), including whether the great-grandfather helped construct the road and gave plaintiff permission to use the portion of Godfrey's Pond Road running over what was then his, and is now Capri's, property. In particular, plaintiff's property caretaker testified during his deposition that he was told by plaintiff's former grounds chairman that the great-grandfather and plaintiff had built Godfrey's Pond Road together and that the great-grandfather thereafter stated that plaintiff's members had "total access" to use the road. When read in the light most favorable to the non-movant, this testimony was simple hearsay—i.e. testimony by plaintiff's property caretaker as to what plaintiff's former grounds chairman and board member told him that he had directly observed, namely the cooperative construction of Godfrey's Pond Road and the great-grandfather granting plaintiff permission to use the portion of that road running across his property—and, thus, properly considered along with the other non-hearsay evidence submitted in opposition to plaintiff's motion (see Thygesen v North Bailey Volunteer Fire Co., Inc., 151 AD3d 1708, 1710 [4th Dept 2017]; Navedo v 250 Willis Ave. Supermarket, 290 AD2d 246, 247 [1st Dept 2002]; see generally Phillips v Kantor & Co., 31 NY2d 307, 312 [1972]). Non-hearsay evidence of historical cooperation between plaintiff and the great-grandfather includes deposition testimony from plaintiff's current safety officer that the great-grandfather provided free gravel to plaintiff to build up and structurally support the road, as well as deposition testimony from two longtime members of plaintiff—one of whom had served on its board for more than 60 years—that the great-grandfather had provided free gravel to build up the road on at least two occasions back in the 1950s and for patching the road over the years. The deposition testimony raises a triable issue of fact whether "[t]he use of the disputed roadway, arising from a cordial and co-operative relationship, connoted not a hostile user but, rather, a permissive one" (Hassinger, 91 AD2d at 989; see generally Becker, 19 NY3d at 82).
With respect to the element of exclusivity, "[t]he focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property" (Rote v Gibbs, 195 AD3d 1521, 1525 [4th Dept 2021], appeal dismissed 37 NY3d 1106 [2021] [internal quotation marks omitted]). While "allowing others to use the property does not necessarily negate 'exclusivity[,]' . . . 'exclusivity' is not established 'where [a claimant's] use is in connection with the use of the owner and the general public' " (Becker, 19 NY3d at 83, quoting Pirman v Confer, 273 NY 357, 363 [1937], rearg denied 274 NY 570 [1937]). Here, Godfrey's Pond Road provides access to both plaintiff's and defendants' properties and was described by Capri in her deposition as "an old farm lane, [which] everybody used." Consistent with that description, defendants testified that they operated all-terrain vehicles on Godfrey's Pond Road to access their abutting parcel, and a non-party witness testified that the great-grandfather's wife and daughters historically would "ride their horses" on the road and that the road was also used by the farmer who leased the abutting parcel from the great-grandfather to access that parcel. Although plaintiff placed a sign at the entrance to Godfrey's Pond Road stating, inter alia, "Warning Private Property" and "members and guests only," plaintiff's financial secretary testified during his deposition that plaintiff never attempted to prevent defendants from using the road (see Penn Hgts. Beach Club, Inc. v Myers, 42 AD3d 602, 606 [3d Dept 2007], lv dismissed 10 NY3d 746 [2008]). We conclude that the deposition testimony raises a triable issue of fact whether plaintiff exercised "exclusive possession and control" over Godfrey's Pond Road " 'separate and exclusive from the general use' " of others, including defendants (Rote, 195 AD3d at 1525). Indeed, plaintiff's demonstration of exclusivity is particularly lacking here inasmuch as plaintiff's motion for summary judgment does not seek a prescriptive easement allowing it to use the portion of the road running across defendants' property (cf. Lyon v Melino, 214 AD2d 992, 992 [4th Dept 1995]) but, rather, fee title to defendants' underlying property, which would allow it to prohibit defendants and anyone else from using Godfrey's Pond Road.
Finally, we note that the order appealed from contains language that improperly orders defendants to "indemnify and hold [p]laintiff harmless for any and all liabilities arising on, due to, or because of [d]efendants' use, maintenance, and/or control of [d]efendants' land located to the east of [p]laintiff's land arising hereinafter" inasmuch as that relief is not authorized by RPAPL 1521 (1) and was
not requested by plaintiff in its motion (see Hurd v Hurd, 66 AD3d 1492, 1493 [4th Dept 2009]).
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court